UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| WAI OLA ALLIANCE, A PUBLIC INTEREST ASSOCIATION, ET AL.<br><br>          Plaintiffs,<br><br>   vs.<br><br>UNITED STATES DEPARTMENT OF THE NAVY, UNITED STATES DEPARTMENT OF DEFENSE, JOINT TASK FORCE RED HILL, UNITED STATES NAVY REGION HAWAII, UNITED STATES NAVY FACILITIES ENGINEERING COMMAND - HAWAII,<br><br>          Defendants. | CIV. NO. 22-00272 LEK-RT |

**ORDER DENYING DEFENDANTS' MOTION FOR
PARTIAL DISMISSAL OF PLAINTIFFS' THIRD AMENDED COMPLAINT**

On August 12, 2024, Defendants United States
Department of Defense ("DOD"), United States Department of the
Navy ("the Navy"), Joint Task Force Red Hill ("JTF-RH"), United
States Navy Region Hawaii ("Navy Region Hawai`i"), and United
States Navy Facilities Engineering Command – Hawaii ("Navy
Engineering – Hawai`i" and collectively "Defendants") filed
their Motion for Partial Dismissal of Plaintiffs' Third Amended
Complaint ("Motion"). [Dkt. no. 138.] On September 27, 2024,
Plaintiffs filed their memorandum in opposition to the Motion

("Opposition"),[1] and Defendants filed their reply on October 11, 2024. [Dkt. nos. 148, 149.] This matter is suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). Defendants' Motion is hereby denied for the reasons set forth below, and Defendants are directed to file their answer to the Third Amended Complaint by **February 12, 2025.**

<u>BACKGROUND</u>

The crux of the instant case is Plaintiffs' allegation that the Navy's operation of the Red Hill Bulk Fuel Storage Facility ("Red Hill") "has and will continue to present imminent and substantial endangerment to health and the environment through historic, existing, and impending contamination of the irreplaceable Southern O`ahu Basal Aquifer (the 'Aquifer')." [Third Amended Complaint at ¶ 6.] Plaintiffs allege the Navy is

---

[1] The plaintiffs are: Wai Ola Alliance ("Wai Ola" or "the Alliance"); and individual members of the Alliance, Mary Maxine Kahaulelio, Clarence Ku Ching, Melodie Aduja, Kim Coco Iwamoto, Peter Doktor, Steven Hanaloa Helelā, Kalamaokaaina Niheu, Dr. Lynette Hiilani Cruz, James J. Rodrigues, and Jade Mahina Frank (collectively "Plaintiffs"). [Third Amended Complaint for Declaratory Relief and Injunctive Relief, filed 6/13/24 (dkt. no. 130) ("Third Amended Complaint"), at pgs. 10-16.] "The Alliance is a community-based organization composed of environmentally and culturally focused individuals and organizations dedicated to protecting the waters of Hawai`i from the effects of past and ongoing releases, discharges, and disposal of petroleum pollutants from [the] Red Hill [Bulk Fuel Storage Facility] . . . ." [<u>Id.</u> at ¶ 39.]

engaging in conduct that constitutes: "a. significant ongoing violations of the Federal Water Pollution Control Act ('Clean Water Act' [or 'CWA']) 33 U.S.C. § 1251, *et seq.*; and b. significant ongoing violations of the Resource Conservation and Recovery Act ('RCRA'), 42 U.S.C. § 6901, *et seq.*" [Third Amended Complaint at ¶ 2.]

The CWA claim ("Count I") alleges:

> 434. The Navy has violated section 301(a) of the Act by discharging pollutants to waters of the United States without permit authorization.

> 435. Each and every discharge of pollutants to waters of the United States without permit authorization is a separate and distinct violation of section 301(a) of the Act. 33 U.S.C. § 1311(a).

> 436. The Navy's violations of section 301(a) of the Act are ongoing and continuous.

[Id. at pg. 68.] It further alleges "the Navy is also discharging pollutants from prior spills near the Hotel, Kilo, Mike, and Bravo piers, via seeps, storm drains, sumps, utility trenches, or other point sources to Puʻuloa,[2] a water of the United States." [Id. at ¶ 441.]

The RCRA claim ("Count II") alleges:

> 2.    The past and continuing practices of Defendants have caused contamination and continue to contaminate the sole source Aquifer and connected soil and rock.

---

[2] "Puʻuloa" refers to Pearl Harbor. See Third Amended Complaint at pg. 2.

> 3.    Defendants' treatment, handling,
> storage, transportation, and disposal of the
> solid wastes has and continues to present an
> imminent and substantial endangerment to public
> health and the environment, 42 U.S.C.
> § 6972(a)(1)(B).

[Id. at pg. 69.[3]]

According to this Court's May 14, 2024 order that

dismissed Plaintiffs' Second Amended Complaint for Declaratory

Relief and Injunctive Relief ("Second Amended Complaint"),

[filed 10/13/23 (dkt. no. 89,] without prejudice ("5/14/24

Order"), upon the filing of the third amended complaint, the

portions of Plaintiffs' claims concerning matters that are being

addressed through the administrative processes under either the

State of Hawai`i Department of Health Solid and Hazardous Waste

Branch Underground Storage Tank Section's ("DOH") May 6, 2022

Emergency Order in Docket No. 22-UST-EA-01 ("5/6/22 Emergency

Order") or the United States Environmental Protection Agency's

("EPA") administrative consent order (EPA Dkt. No. RCRA 7003-R9-

2023-001, EPA Dkt. No. PWS-AO-2023-001) ("2023 Consent Order")

were stayed for one year. See 5/14 Order, filed 5/14/24 (dkt.

no. 127), at 29.[4]

---

[3] The paragraphs of Count II appear to be misnumbered and
are numbered separately from the background allegations and the
paragraphs of Count I.

[4] The 5/14/24 Order is also available at 2024 WL 2214557.
The 5/6/22 Emergency Order is available as Exhibit C to

(. . . continued)

After the filing of the Third Amended Complaint on June 13, 2024, the parties filed a joint statement regarding the scope of the stay:

> The Parties agree that Wai Ola's RCRA allegations and claims, as set out in Paragraphs 2b; 3b; 6; 8; 20-21; 14-16; 78-85; 98-139; 143-159; 174-185; and 333-432 of the Third Amended Complaint, and in the Second Cause of Action, Page 69-70, Paragraphs 1-7, are subject to the stay. . . .
>
> The Parties further agree that Wai Ola's Clean Water Act claims are not subject to the Court's ordered stay. Specifically, the Parties agree that the 2023 Consent Order and Final Emergency Order do not address the Clean Water Act allegations and claims set out in Paragraphs 2a; 3a; 5; 7; 9; 13; 18-19; 64-77; 89-97; 140-142; 165-168; 186-289; and 318-331; and the First Cause of Action, Paragraphs 433-442, of the Third Amended Complaint regarding the Navy's ongoing, unpermitted discharges of pollutants in violation of Section 301(a) of the Clean Water Act (33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)). The Parties further agree that the "Facility Subject to Closure," as defined by the 2023 Consent Order, is not part of Plaintiffs' Clean Water Act claim.

---

Defendants' Amended Unopposed Request for Judicial Notice in Support of Motion to Dismiss or, in the Alternative, Stay Proceedings (ECF No. 90), filed on December 7, 2023 ("Defendants' RJN"). [Dkt. no. 102-4.] The Navy filed the 2023 Consent Order in this case. [Notice of U.S. Environmental Protection Agency Final 2023 Consent Order, filed 6/5/23 (dkt. no. 65), Exh. A (2023 Consent Order).] This Court granted Defendants' RJN. See 5/14/24 Order, 2024 WL 2214557, at *7. Plaintiffs asked this Court to take judicial notice of the EPA's 2023 Consent Order, and the request was granted as to the existence and authenticity of the document. See id.

[Joint Position Statement, filed 7/8/24 (dkt. no. 133), at 2-3 (footnote omitted).] "The 2023 Consent Order defines 'Facility Subject to Closure' as 'the 20-field constructed bulk fuel [underground storage tanks] ("20 USTs"), surge tanks, and the pumps, infrastructure, and associated piping between the 20 USTs and the pumphouse at the Red Hill Bulk Fuel Storage Facility.'" [Id. at 3 n.1.]

In the instant Motion, Defendants argue Plaintiffs' CWA claim should be dismissed, under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), because Plaintiffs did not provide the required notice under Title 33 United States Code Section 1365(b)(1)(A) before they filed this action. Defendants also argue Plaintiffs' CWA claim should be dismissed pursuant to Rule 12(b)(6) as to Plaintiffs' allegations regarding ongoing discharges at any location other than the Hotel Pier and the Kilo Pier. [Motion at 1.]

Plaintiffs respond that: the Motion is untimely because Defendants could have raised the same challenges to prior versions of the complaint, but they failed to do so; the Third Amended Complaint adequately alleges Plaintiffs' claims based on discharges from Mike Pier, Bravo Pier, and Sierra Pier; and Plaintiffs' notices were sufficient to satisfy the CWA. [Mem. in Opp. at 1.]

6

**DISCUSSION**

Before addressing the merits of the arguments in
Defendants' Motion, this Court must address Plaintiffs' argument
that Defendants waived the arguments in the Motion because
Defendants failed to raise them in Defendants' prior answer and
motion to dismiss.

Defendants answered Plaintiffs' First Amended
Complaint for Declaratory Relief, Injunctive Relief, and Civil
Penalties ("First Amended Complaint"), [filed 8/30/22 (dkt.
no. 27)]. [Defendants' Answer to Plaintiffs' First Amended
Complaint for Declaratory Relief, Injunctive Relief, and Civil
Penalties (ECF No. 27) ("Answer to First Amended Complaint"),
filed 9/30/22 (dkt. no. 29).] Defendants filed a Rule 12(b)(6)
motion to dismiss the Second Amended Complaint, which was
addressed in the 5/14/24 Order. See Defendants' Motion to
Dismiss or, in the Alternative, Stay Proceedings, filed 10/27/23
(dkt. no. 90) ("Motion to Dismiss Second Amended Complaint"), at
1.

Federal Rule of Civil Procedure 12(g)(2) states:
"Except as provided in Rule 12(h)(2) or (3), a party that makes
a motion under this rule must not make another motion under this
rule raising a defense or objection that was available to the
party but omitted from its earlier motion." Rule 12(h) states:

7

Waiving and Preserving Certain Defenses.

(1)  When Some Are Waived. A party waives any defense listed in Rule 12(b)(2)-(5) by:

    (A)  omitting it from a motion in the circumstances described in Rule 12(g)(2); or

    (B)  failing to either:

        (i)  make it by motion under this rule; or

        (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2)  When to Raise Others. Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

    (A)  in any pleading allowed or ordered under Rule 7(a);

    (B)  by a motion under Rule 12(c); or

    (C)  at trial.

(3)  Lack of Subject-Matter Jurisdiction. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

Neither a Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction nor a Rule 12(b)(6) motion to dismiss based on failure to state a claim is waived if omitted from a prior motion or from an answer. See Fed. R. Civ. P. 12(h)(1). However, pursuant to Rule 12(g)(2), a defendant who chooses not to raise a Rule 12(b)(6) argument in a prior motion cannot file another Rule 12(b)(6) motion to raise the argument,

but may raise it later in the case, such as in a Rule 12(c) motion for judgment on the pleadings.

## I.    CWA Citizen Suit Notice Requirement

Subject matter jurisdiction is never waived and can be raised at any time. See, e.g., Day v. AT&T Disability Income Plan, 698 F.3d 1091, 1099 (9th Cir. 2012) ("A jurisdictional defect can be raised at any time, and cannot be waived, whereas an argument that the plaintiff failed to satisfy an element of a claim does not ordinarily affect the subject matter jurisdiction of the court, and may therefore be waived." (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 506–07, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)). Thus, if Plaintiffs' compliance with the CWA citizen suit notice-of-intent-to-sue requirement in Title 33 United States Code Section 1365(b) is jurisdictional, the issue can be raised at any time.

Section 1365(b)(1)(A) states that a citizen suit brought under Section 1365(a)(1) may not be commenced "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order[.]" It has been well-settled in the Ninth Circuit that the CWA's citizen suit notice requirement is jurisdictional. See, e.g., Ctr. for Biological Diversity v. Marina Point Dev. Co., 566 F.3d 794, 800 (9th Cir.

9

2009) ("the giving of a 60-day notice is not simply a
desideratum; it is a jurisdictional necessity" (citations
omitted)); <u>Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.</u>, 375
F.3d 913, 916 (9th Cir. 2004) ("In our circuit, compliance with
[the CWA's] notice provision is required for jurisdiction."
(citations omitted)); <u>Nat'l Res. Def. Council v. Sw. Marine,
Inc.</u>, 236 F.3d 985, 995 (9th Cir. 2000) ("If a party seeking to
bring a citizen enforcement action has not complied with the
CWA's notice requirement, then the district court in which that
action is brought lacks subject matter jurisdiction and must
dismiss the action." (citations omitted)); <u>see also</u> <u>Tan Phu
Cuong Inv. LLC v. King Cnty.</u>, 831 F. App'x 235, 238 (9th Cir.
2020) ("The [CWA's notice] requirement is jurisdictional; when a
party fails to give notice, the court must dismiss the claim."
(citing <u>Ctr. for Biological Diversity</u>, 566 F.3d at 800)).

However, the Ninth Circuit has recently stated:

[Title 16 United States Code] Section
1540(g)(2)(A)(i)[5] imposes a precondition to
filing an [Endangered Species Act ("ESA")]
citizen suit "that is not clearly labeled
jurisdictional, is not located in a jurisdiction-
granting provision," and has not been uniformly
treated as jurisdictional. <u>Reed Elsevier[, Inc.
v. Muchnick]</u>, 559 U.S. [154,] 166, 130 S. Ct.
1237 [(2010)]. Thus, the Supreme Court's <u>Arbaugh</u>

---

[5] Section 1540(g)(2)(A)(i) states: "No action may be
commenced under subparagraph (1)(A) of this section — (i) prior
to sixty days after written notice of the violation has been
given to the Secretary, and to any alleged violator of any such
provision or regulation[.]"

> [v. Y&H Corp., 546 U.S. 500 (2006),] line of
> cases has "effectively overruled" our conclusion
> in Save the Yaak [Comm. v. Block, 840 F.2d 714
> (9th Cir. 1988),] that the ESA notice requirement
> is jurisdictional. Miller [v. Gammie], 335 F.3d
> [889,] 899 [(9th Cir. 2003) (en banc)]. We
> therefore hold that the ESA notice requirement in
> Section 1540(g)(2)(A)(i) is a mandatory claims-
> processing rule, not a jurisdictional predicate.
> See Hallstrom [v. Tillamook Cnty.], 493 U.S.
> [20,] 31, 110 S. Ct. 304 [(1989)] (holding that
> RCRA's analogous notice requirement was a
> "mandatory condition[] precedent to commencing
> suit").

Cascadia Wildlands v. Scott Timber Co., 105 F.4th 1144, 1153

(9th Cir. 2024) (some alterations in Cascadia Wildlands).

Although Cascadia Wildlands did not address a CWA

citizen suit, the Ninth Circuit has observed that:

> The ESA notice provision contains language
> similar to citizen suit notice provisions in
> other environmental statutes, including the Clean
> Water Act ("CWA") and the Resource Conservation
> and Recovery Act ("RCRA"). See Hallstrom v.
> Tillamook Cnty., 493 U.S. 20, 23 & n.1, 110 S.
> Ct. 304, 107 L. Ed. 2d 237 (1989). We may look to
> interpretations of the notice provisions of these
> statutes to inform our interpretation of the
> notice provision here. See, e.g., id. at 28–29,
> 110 S. Ct. 304.

Klamath-Siskiyou Wildlands Ctr. v. MacWhorter, 797 F.3d 645, 650

(9th Cir. 2015).[6] Arguably, because of the recognized similarity

---

[6] Klamath-Siskiyou Wildlands noted that the ESA citizen suit
notice requirement is jurisdictional. 797 F.3d at 647 (citing
Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation,
143 F.3d 515, 520 (9th Cir. 1998)). That portion of Klamath-
Siskiyou Wildlands been effectively overruled, see Cascadia
Wildlands, 105 F.4th at 1153, but other portions of Klamath-
(. . . continued)

between the ESA citizen suit notice provision and the CWA
citizen suit notice provision, the Cascadia Wildlands analysis
could apply to the CWA provision. However, unlike the ESA
citizen suit notice provision, which "has not been uniformly
treated as jurisdictional," Cascadia Wildlands, 105 F.4th at
1153, the CWA citizen suit notice provision has been uniformly
treated as jurisdictional in the Ninth Circuit. If the CWA
citizen suit notice provision were now treated as a mandatory
claims-processing rule, Plaintiffs' compliance with the rule
could be waived or forfeited by Defendants. See id. at 1154.

This Court is not aware of any decision applying the
Cascadia Wildlands analysis to the CWA citizen suit notice
provision. One district court has applied Cascadia Wildlands in
the analysis of whether a plaintiff's notice of intent to sue
was effective as to anticipatory violations of the CWA, but the
district court still described the CWA citizen suit notice
requirement as jurisdictional. See Waste Action Project v.
Girard Res. & Recycling LLC, CASE NO. 2:21-cv-00443-RAJ-GJL,
2024 WL 4366978, at *10-11 (W.D. Wash. Sept. 4, 2024), *report
and recommendation adopted* 2024 WL 4345258 (Sept. 30, 2024). The
opinion in Cascadia Wildlands was issued by a Ninth Circuit

---

Siskiyou Wildlands remain good law. See, e.g., id. at 1154-55
(citing the Klamath-Siskiyou Wildlands, 797 F.3d at 651,
analysis of the adequacy of a notice of intent to sue).

three-judge panel, which cannot overrule prior circuit precedent unless "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." See Miller, 335 F.3d at 900. The theory or reasoning of the United States Supreme Court decisions that the Ninth Circuit relied upon in Cascadia Wildlands are not clearly irreconcilable with Ninth Circuit precedent holding that the CWA citizen suit notice requirement is jurisdictional.

This Court is therefore bound by the Ninth Circuit precedent holding that the CWA citizen suit notice requirement is jurisdictional. Because the requirement is jurisdictional, Defendants' failure to challenge Plaintiffs' compliance in Defendants' Answer to First Amended Complaint or in Defendants' Motion to Dismiss Second Amended Complaint did not constitute a waiver.[7]

---

[7] Even if the CWA citizen suit notice requirement is a mandatory claims-processing rule under the Cascadia Wildlands analysis, this Court would conclude that Defendants' compliance argument was not waived. The Ninth Circuit law at the time that Defendants filed the Motion to Dismiss Second Amended Complaint (and at the time that they filed the Answer to First Amended Complaint) was that the CWA citizen suit notice requirement was jurisdictional, and thus noncompliance with the requirement could be raised at any time. Therefore, Defendants could not have raised a Rule 12(b)(6) argument that Plaintiffs failed to comply with a claims processing rule in response to either the First Amended Complaint or the Second Amended Complaint.

A.    **Consideration of Additional Materials**

Plaintiffs' Third Amended Complaint has exhibits attached: a letter dated November 2, 2021 to Honorable Carlos Del Toro, Secretary of the Navy ("Secretary Del Toro") and others from the Alliance's counsel, giving notice of the Alliance's intent to bring a CWA claim against the Navy as the owner and operator of Red Hill ("11/2/21 Notice Letter"); and a letter dated February 7, 2022 supplementing the 11/2/21 Notice Letter ("2/7/22 Notice Letter"). [Third Amended Complaint, Exh. A (11/2/21 Notice Letter), Exh. B (2/7/22 Notice Letter).] In addition, the parties rely upon other documents in connection with the Motion, including: a second supplemental notice sent on March 13, 2023 ("3/13/23 Notice Letter"), the EPA's 2023 Consent Order, and the DOH's 5/6/22 Emergency Order.

Defendants' argument that Plaintiffs failed to comply with the CWA citizen suit notice requirement is a factual jurisdictional attack brought pursuant to Rule 12(b)(1). See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) ("A Rule 12(b)(1) jurisdictional attack may be facial or factual." (citation omitted)); Leite v. Crane, 749 F.3d 1117, 1121 (9th Cir. 2014) ("A 'factual' attack . . . contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." (citations omitted)).

14

> "In resolving a factual attack on
> jurisdiction, the district court may review
> evidence beyond the complaint without converting
> the motion to dismiss into a motion for summary
> judgment." <u>Safe Air</u>, 373 F.3d at 1039. The court
> "need not presume the truthfulness of the
> plaintiff['s] allegations," <u>White v. Lee</u>, 227
> F.3d 1214, 1242 (9th Cir. 2000), and may "resolve
> factual disputes concerning the existence of
> jurisdiction," <u>McCarthy v. United States</u>, 850
> F.2d 558, 560 (9th Cir. 1988). "Once the moving
> party has converted the motion to dismiss into a
> factual motion by presenting affidavits or other
> evidence properly brought before the court, the
> party opposing the motion must furnish affidavits
> or other evidence necessary to satisfy its burden
> of establishing subject matter jurisdiction."
> <u>Savage v. Glendale Union High Sch., Dist.</u>
> <u>No. 205</u>, 343 F.3d 1036, 1040 (9th Cir. 2003).

<u>Pub. Int. Legal Found., Inc. v. Nago</u>, CIV. NO. 23-00389 LEK-WRP,

2024 WL 3233994, at *3 (D. Hawai`i June 28, 2024) (some

citations omitted).

Because this Court is considering Defendants' notice

argument as a factual attack on jurisdiction pursuant to Rule

12(b)(1), this Court may review materials beyond the Third

Amended Complaint without converting the instant Motion into a

motion for summary judgment. <u>See</u> <u>Safe Air</u>, 373 F.3d at 1039.

This Court will therefore consider the 11/2/21 Notice Letter,

the 2/7/22 Notice Letter, the 3/13/23 Notice Letter

(collectively "the Notice Letters"), the EPA's 2023 Consent

Order, and the DOH's 5/6/22 Emergency Order in ruling on

Defendants' notice challenge.[8]

**B.    Sufficiency of Plaintiffs' Notices**

Plaintiffs served the 11/2/21 Notice Letter and the

5/6/22 Notice Letter more than sixty days before Plaintiffs

asserted their CWA claim in the First Amended Complaint, which

---

[8] Even if this Court considered Defendants' notice challenge
under Rule 12(b)(6), this Court would consider the Notice
Letters, the 2023 Consent Order, and the 5/6/22 Emergency
without converting the Motion into a motion for summary
judgment. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d
988, 998 (9th Cir. 2018) (stating that district courts may
consider materials outside the pleadings without converting a
Rule 12(b)(6) motion into a motion for summary judgment if the
materials are incorporated by reference into the pleadings or if
the materials are subject to judicial notice under Federal Rule
of Civil Procedure 201). The 11/2/21 Notice Letter and the
2/7/22 Notice Letter are attached to, and expressly incorporated
by reference in, the Third Amended Complaint. See Third Amended
Complaint at ¶¶ 23, 26. Although the 3/13/23 Notice Letter is
not attached to the Third Amended Complaint, it is also
incorporated by reference because there are significant
allegations about the 3/13/23 Notice Letter in the Third Amended
Complaint, and it is part of the basis for Plaintiffs' position
that they complied with the CWA citizen suit notice requirement.
See id. at ¶¶ 31-36; Khoja, 899 F.3d at 1002 ("a defendant may
seek to incorporate a document into the complaint if the
plaintiff refers extensively to the document or the document
forms the basis of the plaintiff's claim" (citation and internal
quotation marks omitted)). Further, this Court would take
judicial notice of the EPA's 2023 Consent Order and the DOH's
5/6/22 Emergency Order because they are administrative orders
that are part of the public record. See Barron v. Reich, 13 F.3d
1370, 1377 (9th Cir. 1994) (stating "[r]ecords and reports of
administrative bodies . . . clearly constitute" materials that a
court make take judicial notice of).

was filed on August 30, 2022,[9] and there has been no allegation
that Plaintiffs failed to provide the notices to any required
entity or official. See 33 U.S.C. § 1365(b)(1)(A). Thus, the
issue before this Court whether the alleged CWA violations at
issue in the Motion are covered by either the 11/2/21 Notice
Letter or the 5/6/22 Notice Letter. Because Plaintiffs served
the 3/13/23 Notice Letter after they asserted their CWA claim in
the First Amended Complaint, the 3/13/23 Notice Letter is not
relevant to the issue before this Court.

> [T]he EPA has promulgated implementing
> regulations for the notice provision of the CWA,
> providing that a notice
>
> > shall include sufficient information to
> > permit the recipient to identify the
> > specific standard, limitation, or order
> > alleged to have been violated, the activity
> > alleged to constitute a violation, the
> > person or persons responsible for the
> > alleged violation, the location of the
> > alleged violation, the date or dates of such
> > violation, and the full name, address, and
> > telephone number of the person giving
> > notice.
>
> 40 C.F.R. § 135.3(a). . . .
>
> The notice requirement serves two purposes.
> First, it "allows Government agencies to take
> responsibility for enforcing environmental
> regulations, thus obviating the need for citizen
> suits." Hallstrom, 493 U.S. at 29, 110 S. Ct.
> 304. Second, it "gives the alleged violator 'an
> opportunity to bring itself into complete

---

[9] The original complaint did not allege a CWA claim. See
generally Complaint for Declaratory Relief, Injunctive Relief,
and Civil Penalties, filed 6/14/22 (dkt. no. 1).

compliance with the Act and thus likewise render
unnecessary a citizen suit.'" Id. (quoting
Gwaltney of Smithfield, Ltd. v. Chesapeake Bay
Found., Inc., 484 U.S. 49, 60, 108 S. Ct. 376, 98
L. Ed. 2d 306 (1987)). The Supreme Court has
concluded that these purposes are best fulfilled
by requiring strict compliance with the statute's
timeliness and party identification requirements.
Id.

    To provide proper notice of an alleged
violation, a would-be plaintiff must "[a]t a
minimum . . . provide sufficient information
. . . so that the [notified parties] could
identify and attempt to abate the violation."
Southwest Center [for Biological Diversity v.
U.S. Bureau of Reclamation], 143 F.3d [515,] 522
[(9th Cir. 1998)] (citing Pub. Interest Research
Grp. of N.J., Inc. v. Hercules, Inc. (Hercules),
50 F.3d 1239, 1249 (3d Cir. 1995)). A citizen
"'is not required to list every specific aspect
or detail of every alleged violation. Nor is the
citizen required to describe every ramification
of a violation.'" Cmty. Ass'n for Restoration of
the Env't v. Henry Bosma Dairy (Bosma Dairy), 305
F.3d 943, 951 (9th Cir. 2002) (quoting Hercules,
50 F.3d at 1248). Rather, the analysis turns on
the "overall sufficiency" of the notice. Id.; see
also Marbled Murrelet v. Babbitt, 83 F.3d 1068,
1073 (9th Cir. 1996) (examining "the letter as a
whole" for sufficiency of notice). A reviewing
court may examine both the notice itself and the
behavior of its recipients to determine whether
they understood or reasonably should have
understood the alleged violations. See Natural
Res. Def. Council v. Sw. Marine, Inc. (Southwest
Marine), 236 F.3d 985, 997 (9th Cir. 2000); see
also Atl. States Legal Found., Inc. v. Stroh Die
Casting Co., 116 F.3d 814, 820 (7th Cir. 1997).

    In three citizen suit cases,[10] we have
allowed plaintiffs to plead alleged violations

---

[10] The three cases discussed in Klamath-Siskiyou Wildlands
were: Ecological Rights Foundation v. Pacific Gas & Electric
Co., 713 F.3d 502 (9th Cir. 2013); Bosma Dairy, 305 F.3d 943;

(. . . continued)

> that were not specifically detailed in a notice
> letter. The key issue in all three cases was
> whether the notice provided information that
> allowed the defendant to identify and address the
> alleged violations, considering the defendant's
> superior access to information about its own
> activities. . . .

Klamath-Siskiyou Wildlands, 797 F.3d 645, 650–51 (9th Cir. 2015)

(some alterations in Klamath-Siskiyou Wildlands).

In Bosma Dairy, in holding that the plaintiff's CWA

notice was broad enough to permit the plaintiff to pursue

violations not specifically identified in the notice, the Ninth

Circuit noted that: the violations in the notice and the

additional violations involved the same source - depositing the

same waste material "into clearly identifiable navigable waters

of the U.S."; and that "in essence all of the alleged violations

are a single violation that repeated over a span of time." Bosma

Dairy, 305 F.3d at 952 (citation omitted).

## 1.    **Hālawa Stream**

Defendants argue Plaintiffs' notice did not identify

Hālawa Stream among the navigable waters at issue, and the

general reference to "'waters of the United States'" is

insufficient. [Motion, Mem. in Supp. at 13.] The EPA regulation

does not list the affected navigable waters among the

information that the potential plaintiff must provide in its

---

and San Francisco BayKeeper, Inc. v. Tosco Corp., 309 F.3d 1153
(9th Cir. 2002). Klamath-Siskiyou Wildlands, 797 at 651–53.

notice of intent to sue. See 40 C.F.R. § 135.3(a). Further, although the Ninth Circuit cited the fact that the noticed violations in Bosma Dairy and the additional violations involved the same navigable waters as support for the expansive reading of the notice, nothing in Bosma Dairy indicates that additional violations can only be covered by a notice of intent to sue if they involve the same navigable waters as the violations expressly identified in the notice.

Hālawa Stream is in close proximity to Pearl Harbor, i.e., Pu`uloa. See, e.g., Third Amended Complaint at ¶¶ 90, 97 (images of relevant areas); id. at ¶ 204 ("Hālawa Stream empties into Pu`uloa south of the Pearl Harbor National Memorial, and immediately north of Hotel Pier."); id. at ¶ 206 ("Hotel Pier is approximately 0.6 acres and is bordered by Hālawa Stream and Pearl Harbor to the north, northeast, northwest, and west."). Pu`uloa is clearly alleged as the affected navigable waters in the 2/7/22 Notice Letter. See Third Amended Complaint, Exh. B (2/7/22 Notice Letter) at 4. Further, Plaintiffs allege the same violations of the CWA as to Pu`uloa and Hālawa Stream – the discharge of oil and/or petroleum from Red Hill at Hotel Pier. See, e.g., id. at ¶ 209 ("On March 17, 2020, at approximately 9:14 a.m. HST, the Navy notified DOH of a discharge of oil to Pu`uloa and Hālawa Stream at Hotel Pier . . . ."); id. at ¶ 214 ("On June 2, 2020, at approximately 1:45 p.m. HST, the Navy

again notified DOH of a discharge of oil to Pu`uloa and Hālawa
Stream at Hotel Pier . . . .”). The 2/7/22 Notice Letter alleges
that the March 17, 2020 discharge and the June 2, 2020 discharge
were unpermitted discharges in violation of the CWA. See Third
Amended Complaint, Exh. B (2/7/22 Notice Letter) at 9
(“Information available to Wai Ola Alliance indicates that on
March 17 and June 2, 2020, Red Hill discharged pollutants to
Pu`uloa at the Hotel Pier.”).

        The 2/7/22 Notice Letter does not specifically name
Hālawa Stream as affected navigable waters, but the violations
of the CWA affecting Pu`uloa that were alleged in the 2/7/22
Notice Letter are the same alleged violations affecting Hālawa
Stream. Therefore, the 2/7/22 Notice Letter provided sufficient
information to the appropriate parties to allow them to identify
and attempt to abate the violations affecting Hālawa Stream. See
Sw. Ctr., 143 F.3d at 522. The 2/7/22 Notice Letter satisfied
the CWA citizen suit notice requirement as to the alleged
violations regarding discharges affecting Hālawa Stream.

## 2.    **Mike Pier and Bravo Pier**

        Defendants also argue the allegations in paragraph 441
(except for discharges from Hotel Pier and Kilo Pier) are not
sufficiently similar to what is described in the 2/7/22 Notice
Letter, and therefore Defendants contend the notice is not

effective as to the alleged discharges to Mike Pier and Bravo
Pier. [Motion, Mem. in Supp. at 14.]

Paragraph 441 alleges "the Navy is . . . discharging
pollutants from prior spills near the Hotel, Kilo, Mike, and
Bravo piers, via seeps, storm drains, sumps, utility trenches,
or other point sources to Pu`uloa, a water of the United
States." [Third Amended Complaint at pgs. 68-69.] The 2/7/22
Notice Letter alleges that the Navy "discharged pollutants to
Pu`uloa at the Hotel Pier" and that, "[o]n July 23, 2021, the
Navy confirmed a release of pollutants occurring between July 16
and July 19, 2021, from Red Hill to Pu`uloa at Kilo Pier." See
Third Amended Complaint, Exh. B (2/7/22 Notice Letter) at 9. The
2/7/22 Notice Letter indicates that there may be more similar
discharges, but six were known to the Alliance at that time. See
id. ("the Navy's **reported** discharges confirm **at least** six (6)
violations, and days of violation, of the Clean Water Act in
2020 and 2021" (emphases added)). The 2/7/22 Notice Letter also
indicates that there were multiple piers utilized in Red Hill's
fuel operations. See id. at 3 ("Red Hill includes seven miles of
tunnels, twenty-nine miles of exposed and buried pipelines,
ventilation systems with air intakes and exhaust portals, a
pumphouse, control room, surge tanks, slop oil and oil recovery
facilities, the remains of burn pits for petroleum product

disposal, and fueling stations at **various piers** in Puʻuloa."
(emphasis added)).

The Third Amended Complaint alleges Red Hill operated
"20 USTs, surge tanks, pipelines and related infrastructure used
to transport products, including fuel, to and from Hotel Pier,
Kilo Pier, Mike Pier, Bravo Pier, and Sierra Pier." Third
Amended Complaint at ¶ 4; see also id. at ¶ 89 ("The USTs are
connected by pipelines to fueling stations at various piers
along Puʻuloa, including but not limited to Hotel Pier, Kilo
Pier, Mike Pier, Bravo Pier, and Sierra Pier."). Plaintiffs also
allege that "[p]iping at Hotel, Kilo, Sierra, Mike and Bravo
piers are over Puʻulo [sic] and/or in Puʻuloa during high tide."
[Id. at ¶ 97.]

The 2/7/22 Notice Letter expressly alleged CWA
violations at Hotel Pier and Kilo Pier and provided sufficient
information to the appropriate parties to allow them to identify
and attempt to abate the violations caused by problems with Red
Hill's infrastructure at Hotel Pier and Kilo Pier, such as
seeping. Although Mike Pier and Bravo Pier are not specifically
identified in the 2/7/22 Notice Letter, the letter is sufficient
to provide notice of the same type of violations caused by
contemporaneous problems with Red Hill's infrastructure at Mike
Pier and Bravo Pier. The appropriate parties had the opportunity
to identify and attempt to abate the violations caused by the

23

infrastructure at Mike Pier and Bravo Pier. The 2/7/22 Notice Letter therefore satisfied the CWA citizen suit notice requirement as to the violations at Mike Pier and Bravo Pier alleged in paragraph 441 of the Third Amended Complaint.

### 3. <u>Ruling</u>

Because the 2/7/22 Notice Letter was sufficient, the Motion is denied to the extent that Defendants argue this Court lacks subject matter jurisdiction over Plaintiffs' claims based on the alleged CWA violations affecting Hālawa Stream and the alleged violations caused by the Red Hill infrastructure at Mike Pier and Bravo Pier.[11]

## II. **Whether Plaintiffs State a Claim Based on Discharges from Mike Pier, Bravo Pier, and Sierra Pier**

Defendants' argument that Plaintiffs fail to state a plausible CWA claim alleging ongoing discharges at Mike Pier, Sierra Pier, and Bravo Pier could have been raised when Defendants filed their Motion to Dismiss Second Amended Complaint. An identical paragraph to paragraph 441 of the Third Amended Complaint appeared in the Second Amended Complaint. <u>See</u> Second Amended Complaint at ¶ 409. In addition, the Second Amended Complaint alleged:

> 366. The [independent assessment by Simpson Gumpertz & Herger Inc.] specifically documents

---

[11] Even if this Court considered Defendants' notice argument under the Rule 12(b)(6) standard, this Court would still deny the Motion.

> extensive pipe corrosion, pipe pitting, pipe
> hanger failure, severe valve corrosion, and
> improper pipe routing, at Hotel, Kilo, Sierra,
> Mike and Bravo piers.
>
> 367. Piping at Hotel, Kilo, Sierra, Mike and
> Bravo piers are over Pu`uloa, and/or in Pu`uloa
> during high tide.

[Id. at pg. 51 (citation omitted).] These allegations also

appear in the Third Amended Complaint. See Third Amended

Complaint at ¶¶ 258, 265.

Defendants could have raised their current

Rule 12(b)(6) argument regarding the portion of Plaintiffs' CWA

claim based on violations at Mike Pier, Sierra Pier, and Bravo

Pier when they filed the Motion to Dismiss Second Amended

Complaint. Defendants' failure to state a claim argument was not

waived because they chose not to raise it in the Motion to

Dismiss Second Amended Complaint, but Defendants are required to

raise the argument later in the case, such as in a Rule 12(c)

motion for judgment on the pleadings. This Court therefore

declines to address whether Plaintiffs state a plausible CWA

claim based on alleged violations at Mike Pier, Sierra Pier, and

Bravo Pier. Defendants' Motion is denied to the extent that it

seeks dismissal of that portion of Plaintiffs' CWA claim

pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Dismissal of Plaintiffs' Third Amended Complaint, filed August 12, 2024, is HEREBY DENIED. Defendants are ORDERED to file their answer to the Third Amended Complaint by **February 12, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 22, 2025.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

**WAI OLA ALLIANCE, A PUBLIC INTEREST ASSOCIATION, ET AL. VS. UNITED STATES DEPARTMENT OF THE NAVY, ET AL; CV 22-00272 LEK-RT; ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' THIRD AMENDED COMPLAINT**