ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

BRYAN J. HARRISON (FL #106379)
DAVID D. MITCHELL (IL #6302250)
ALEX J. HARDEE (NC #56321)
ALEXANDER M. PURPURO (FL #1025872)
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 353-5230 (Purpuro)
alexander.purpuro@usdoj.gov

*Attorneys for Defendants*

KENNETH M. SORENSON
Acting U.S. Attorney
District of Hawaii

DANA A. BARBATA (HI #9112)
Assistant U.S. Attorney
Room 6-100, PJKK Fed. Bldg.
300 Ala Moana Blvd.
Honolulu, HI 96850
Tel: (808) 541-2850
dana.barbata@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| WAI OLA ALLIANCE, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF DEFENSE, *et al.*,<br><br>    Defendants. | Case No. 1:22-cv-272-LEK-RT<br><br>**DEFENDANTS' PRETRIAL CONFERENCE STATEMENT**<br><br><u>District Judge</u>: Leslie E. Kobayashi<br><u>Magistrate Judge</u>: Rom A. Trader<br><br><u>Pretrial Conference</u>: September 9, 2025 at 9am |

# TABLE OF CONTENTS

A.  Party ............................................................................................................1

B.  Jurisdiction and Venue ................................................................................1

C.  Substance of Action .....................................................................................1

D.  Undisputed Facts .........................................................................................2

E.  Disputed Facts .............................................................................................7

F.  Relief Sought ...............................................................................................8

G.  Points of Law ..............................................................................................9

    a.  Clean Water Act Liability in Citizen Suits for
        Unpermitted Discharges ........................................................................9

        i.  CWA Liability - Generally ..........................................................9

        ii.  Ongoing Discharges ...............................................................10

    b.  Groundwater Discharges ...................................................................12

    c.  Remedy ...............................................................................................13

H.  Previous Motions .......................................................................................14

I.  Witnesses to be Called ..............................................................................18

    1.  Guy Pasco .........................................................................................18

    2.  Lieutenant Commander Justin Lemons, U.S. Navy ...........................18

    3.  Ted L. Caudill, P.E. ...........................................................................19

    4.  Paul B. Summers, P.E., S.E., CPEng, F.ASCE .................................19

i

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

J.    Exhibits, Schedules, and Summaries ............................................................19

K.    Further Discovery or Motions ........................................................................21

L.    Stipulations .....................................................................................................22

M.    Amendments, Dismissals ................................................................................22

N.    Settlement Discussions ...................................................................................22

O.    Agreed Statement ............................................................................................23

P.    Bifurcation ......................................................................................................23

Q.    Reference to Master or Magistrate Judge .....................................................23

R.    Appointment and Limitation of Experts ........................................................24

S.    Trial .................................................................................................................24

T.    Estimate of Trial Time ....................................................................................24

U.    Claims of Privilege or Work Product .............................................................24

V.    Miscellaneous .................................................................................................24

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

## A.   Party

This statement is filed on behalf of Defendants Department of the Navy,

Department of Defense, Joint Task Force Red Hill, Navy Region Hawaii, and Navy

Facilities Engineering Command – Hawaii.

## B.   Jurisdiction and Venue

Plaintiffs brought this case under the Clean Water Act ("CWA").[1]  As

relevant here, the CWA citizen suit provision authorizes civil actions in district

courts against any person, including the United States, "who is alleged to be in

violation of . . . an effluent standard or limitation under [the CWA]."  33 U.S.C. §

1365(a)(1).  The citizen suit provision likewise provides that "[t]he district courts

shall have jurisdiction . . . to enforce such an effluent standard or limitation."  *Id.*

Defendants do not dispute that this Court has jurisdiction over this action.

Defendants likewise agree that venue is proper in the District of Hawaii.  28

U.S.C. § 1402(b).

## C.   Substance of Action

This is a CWA citizen suit asserting Defendants violated the CWA

prohibition against discharging pollutants to waters of the United States without a

---

[1] Plaintiffs also asserted a claim under the Resource Conservation Recovery Act
("RCRA") seeking relief with respect to releases of fuel at the Red Hill
Underground Storage Facility.  Plaintiffs' RCRA claim is presently stayed and the
parties stipulated that the releases from the Red Hill Facility are not part of the
CWA claim.  *See* Dkt. No. 127, 133.

permit.  *See* 33 U.S.C. § 1311(a).  Specifically, Plaintiffs assert that Defendants are discharging petroleum products to navigable waters from part of the petroleum-carrying infrastructure at Joint Base Pearl Harbor-Hickam to Pearl Harbor and Halawa Stream.  Plaintiffs' CWA claim is limited to the "Facility," which consists of aboveground storage tanks, aboveground and underground pipelines between the underground pumphouse and storage tanks, the fuel oil reclamation facility, and the fueling points at Hotel, Kilo, Sierra, Mike, and Bravo Piers.

Plaintiffs contend both that there are ongoing releases of pollutants from the Facility and that there is a likelihood that past releases will recur.

**D.  Undisputed Facts**

The following facts are either admitted by Plaintiffs, *see* Dkt. No. 226, or are not reasonably in dispute[2]:

1.    On March 17, 2020, the Navy reported to the Hawaii Department of Health ("DOH") a release of oil from the Hotel Pier Area into Pearl Harbor and Halawa Stream after observing fuel seeping into Pearl Harbor and Halawa Stream.

2.    DOH issued a "Notice of Interest in Release or Threatened Release of Hazardous Substances" requiring the Navy to locate and stop the source of the

---

[2] Defendants anticipate the Parties filing a stipulation with the Court setting for all of most of these facts.

Hotel release, remediate the environment, and submit additional pipeline testing results to DOH.

3.      In response to the Hotel Pier release, the Navy deployed divers, installed booms to capture free product, and dug interceptor trenches and more than 20 observation wells on land to search for the source of the leak in the soil and groundwater and to capture any free product.

4.      The Navy initially believed that a potential source of the Hotel Pier release was residual contamination from an existing plume in the same area because the fuel appeared weathered, but its investigation revealed that the Hotel Pier release was a mixture of old and new fuel.

5.      The land adjacent to Hotel Pier historically had been used for petroleum storage and conveyance and included a valve station, underground and aboveground storage tanks, and pumping stations.

6.      After testing its pipes, the Navy discovered that an underground defuel pipeline had leaked and released fuel into the soil, which comingled with the existing plume, oversaturated the soil, and caused the mixture to migrate and seep out of cracks in the sheet-pile of the seawall under and around Hotel Pier.

7.      On January 23, 2021, the Navy isolated the defuel pipeline, preventing it from receiving fuel; it is currently isolated and out of service and is in the process of being permanently decommissioned; all associated riser valves have

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

been removed, all risers have been filled with concrete, and all riser piping has been capped and seal welded.

8.      The Navy deployed divers to repair areas of deterioration in the sheet-pile of the seawall to prevent further migration of fuel into the surface water.

9.      Following the isolation of the defuel pipeline, the amount of fuel recovered from the environment drastically decreased and by August 2021, the defuel pipeline ceased leaking altogether.

10.     The Navy concluded that the source of the Hotel Pier release was the defuel pipeline which had been taken out of commission.

11.     DOH concurred with the Navy's assessment regarding the source of the Hotel release, noted its plan to transition from "joint emergency response" to "state oversight," and directed the Navy to submit a confirmed release form under Hawaii's underground storage tank ("UST") regulations, which the Navy promptly did.

12.     In July 2021, fuel was released from a pipeline at Kilo Pier into a boomed area for a period of one week.

13.     The Navy deployed absorbent pads and skimmers to recover the fuel from Kilo Pier and reported the release, which was contained within a boomed area, to DOH under the state's UST regulations.

4

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

14.    Fuel piping beneath Kilo Pier was isolated, drained, and removed from service on July 16, 2021, and those pipelines have been out of service since that date.

15.    Fuel piping beneath Mike and Bravo Piers was isolated, drained, and removed from service on January 14, 2022.

16.    Kilo, Bravo, and Mike Pier fuel piping will remain empty, isolated, and out-of-service until all necessary repairs and replacements are complete.

17.    The Navy is planning to replace all the piping and supports under Kilo Pier and a contract was awarded for this work on June 16, 2024, with preliminary work in progress and pipeline replacement expected to be completed by December 2025.

18.    Contract proposals for repair work at Bravo and Mike Piers have been issued, with the contract award expected in the fiscal year 2026.

19.    The fuel piping at Sierra Pier is also slated for improvements, with certain preventative repairs to be completed, if deemed necessary after inspection, as part of the contract for Bravo and Mike Piers repairs.

20.    The Upper Tank Farm is situated inland of Pearl Harbor and consists of six aboveground storage tanks that store fuel before it is routed by pipeline to the operational piers, and all six tanks sit within a secondary containment system

designed to capture any inadvertently released fuel and prevent any release to the environment.

21.    The active fuel pipelines at Hotel Pier are contained within a concrete trough on the topside of the pier deck, which provides secondary containment designed to capture any inadvertently released fuel and prevent any release to the environment.

22.    Since 2020, the Navy has completed significant upgrades and repairs at Hotel Pier as part of the 253 repairs performed prior to defueling the Red Hill Bulk Fuel Storage Facility; those repairs were verified by EPA and DOH.

23.    In 2023, the Navy successfully defueled about 104 million gallons of fuel from the Red Hill Bulk Fuel Storage Facility that was directed through the fueling infrastructure at Hotel Pier for defueling.

24.    Annual pipeline pressure testing was successfully completed on the active pipelines at Hotel Pier and Sierra Pier in May and June 2025 and all piping passed the testing.

25.    Concurrent with the piping repair work at Mike, Bravo, Sierra, and Kilo piers, the Navy is performing planning for future projects to replace the fuel infrastructure at these piers.

26.    The Navy has awarded a contract in August 2025 for complete demolition of the defueling pipeline at Hotel Pier and for replacement of thermal

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

relief valves and piping between Hotel Pier and valve stations, with work presently underway and contract completion expected by September 2027.

27.    The replacement of all fuel piping at Kilo Pier is scheduled to be completed in December 2025.

28.    As part of the pier improvements, the Navy will make needed repairs or replace thermal relief valves.

Defendants intend to send Plaintiffs a proposed stipulation to the above facts to narrow the disputed issues at trial.

## E.    Disputed Facts

Defendants' Motion for Summary Judgment is pending.  As explained in that motion, Defendants contend that Plaintiffs have failed to create a genuine dispute of material fact that should be tried.  In the event Defendants' Motion for Summary Judgment is denied, however, the factual issues in dispute may be further clarified or narrowed and are likely to include:

1.    Whether the Navy identified and addressed the source of the Hotel Pier release.

2.    Whether there are any structural defects at the Facility that are reasonably likely to result in a fuel release and, if so, whether such a release would result in a violation of the CWA.

3.      Whether the Navy's operation of the Facility is reasonably likely to result in a fuel release and, if so, whether such a release would result in a violation of the CWA.

4.      If a discharge of fuel from the Facility to waters of the United States is reasonably likely to recur, whether there are any further measures Defendants could undertake to further reduce that likelihood.

**F.   Relief Sought**

Defendants request that this Court find that:

1.      There are no ongoing releases of pollutants from the Facility.

2.      Any past releases of pollutants from the Facility are not reasonably likely to recur due to the Navy's extensive repair work, testing and inspection of infrastructure, ongoing tracking of maintenance and repairs, and deactivation of relevant fueling infrastructure until needed repairs are completed.

3.      If the Court finds that there are ongoing discharges at the Facility or that past discharges are reasonably likely to recur, narrowly tailor the remedy to what is necessary to abate ongoing violations found.

4.      If the Court finds that the Navy is liable under the CWA, declare that the United States has not waived sovereign immunity for punitive civil penalties, to the extent that Plaintiffs request such penalties.

## G.  Points of Law

### a.  Clean Water Act Liability in Citizen Suits for Unpermitted Discharges

#### i.  CWA Liability – Generally

Citizens may sue an agency of the United States that is "in violation of . . . an effluent standard or limitation," including the "discharge of any pollutant" into a water of the United States except as in compliance with the CWA.  33 U.S.C. §§ 1365(a)(1), (f), 1311(a).  Plaintiff bears the burden of proving any such violation. *Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.*, 13 F.3d 305, 308 (9th Cir. 1993) (citation omitted).  The plaintiff must show that the defendant "(1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a point source." *Id.*

The CWA defines these terms. To "discharge" means to add any pollutant to "navigable waters from any point source."  33 U.S.C. § 1362(12)(A).  The term "pollutant" is defined broadly and includes fuel.  *Id.* § 1362(6); *see also United States v. Curtis*, 988 F.2d 946, 947 (9th Cir. 1993).  "Navigable waters" are "the waters of the United States, including the territorial seas."  *Id.* § 1362(7).  "Point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."  *Id.* § 1362(14).

## ii. Ongoing Discharges

Despite this broad language, the CWA has limits for citizen suits. The statute "does not permit citizen suits for wholly past violations"; rather, the plaintiff must prove that there are "ongoing violations." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 64 (1987). A plaintiff can prove that there are ongoing violations "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Sierra Club v. Union Oil Co. of Cal.*, 853 F.2d 667, 671 (9th Cir. 1988) (quoting *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171-72 (4th Cir. 1988)). "Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition." *Id.* (quoting *Chesapeake Bay Found.*, 844 F.2d at 172).

In assessing whether there is a likelihood of repetition "the district court may wish to consider whether remedial actions were taken to cure violations, the ex ante probability that such remedial measures would be effective, and any other evidence presented during the proceedings that bears on whether the risk of defendant's continued violation had been completely eradicated when citizen-plaintiffs filed suit." *Id.* (quoting *Chesapeake Bay Found.*, 844 F.2d at 172) (emphasis removed). Moreover, a plaintiff must demonstrate with specificity that a

past discharge will recur, not simply speculate generally that an actor who discharged previously might continue to do so. *See, e.g., Atl. States Legal Found. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 n.13 (11th Cir. 1990) ("The law does not require a defendant to show that there is no conceivable chance that a future violation will occur, but only that 'there is no reasonable expectation that the wrong will be repeated.'"); *Day, LLC v. Plantation Pipe Line Co.*, 315 F. Supp. 3d 1219, 1240 (N.D. Ala. 2018) (rejecting the plaintiffs' effort to "wield the citizen-suit provision of the CWA as a hammer to address any and all effects of the pipeline leak rather than the fine scalpel that it is"); *Pro-Built Dev. LLC v. Delta Oil Servs. Inc.*, No. 7:21-cv-1477, 2024 WL 5056625, at *13 (N.D. Ala. Dec. 10, 2024) (finding that the mere fact that the defendant continued to operate its business was insufficient to show that the defendant was reasonably likely to violate the CWA again).

In sum, the CWA is forward-looking: Plaintiffs bear the burden of proving "'either continuous or intermittent violation' so that 'a reasonable likelihood exists that the defendant will continue to pollute in the future.'" *See Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 115 F.4th 1217, 1222 (9th Cir. 2024) (alterations omitted) (quoting *Gwaltney*, 484 U.S. at 57). The CWA does not impose liability for wholly past violations. *Id.*

b. Groundwater Discharges

Evidence of discharges to groundwater or residual pollutants that remain in groundwater from wholly past discharges are insufficient to establish liability. The CWA imposes liability only for "direct discharge[s] from a point source into navigable waters or when there is the functional equivalent of a direct discharge." *Cnty. of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 183 (2020) (emphasis in original). In other words, an unpermitted discharge occurs under the CWA "when a point source directly deposits pollutants into navigable waters, or when the discharge reaches the same result through roughly similar means." *Id.* at 183-84. Discharges to groundwater alone cannot establish liability in a citizen-suit alleging unpermitted discharges, because groundwater is not a water of the United States. *See id.* at 171, 184. When a plaintiff alleges that discharges from a point source travel through groundwater before reaching a water of the United States, the plaintiff must prove such a discharge is the functional equivalent of a direct discharge to establish liability under the CWA. *See id.* Functional equivalence is a fact-intensive inquiry based on site-specific analysis. *See id.* at 184-85. Several factors may be relevant to the functional equivalence inquiry:

> (1) transit time, (2) distance traveled, (3) the nature of the material through which the pollutant travels, (4) the extent to which the pollutant is diluted or chemically changed as it travels, (5) the amount of pollutant entering the navigable waters relative to the amount of the pollutant that leaves the point source, (6) the manner by or area in which

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

the pollutant enters the navigable waters, (7) the degree to which the pollution (at that point) has maintained its specific identity.

*Id.* The applicable factors may differ for specific cases, but the plaintiff bears the burden to prove that a discharge to groundwater reaches waters of the United States and is the functional equivalent of a direct discharge. *See id.*; *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002) (plaintiff bears burden to prove ongoing CWA violations).

    c.  <u>Remedy</u>

Even if the Court finds that Defendants violated the CWA, the Court can only order a remedy to address an ongoing violation. Plaintiffs request injunctive relief to "order engineering best practice operations, testing, maintenance, tracking, and accountability for the vast petroleum infrastructure at the Facility." Dkt. No. 232 at 4. But "'[a] request for injunctive relief remains live' only when a 'present harm' is left to enjoin and '[p]ast exposure to illegal conduct' is insufficient." *Coastal Env't Rts. Found.*, 115 F.4th at 1224 (quoting *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017)). Accordingly, there is no basis for "injunctive relief for wholly past violations." *See id.* Even if there were, relief should be tailored only to that which is necessary to enforce the CWA limitation violated. 33 U.S.C. § 1365(a) (providing jurisdiction "to enforce such an effluent standard or limitation" under the CWA). And if the Court does find the Navy liable for ongoing violations, any punitive civil penalties Plaintiffs seek are not

13

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

available because the United States has not waived sovereign immunity for them.

*U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 627 (1992), *abrogated on other grounds by* Federal Facility Compliance Act of 1992, Pub. L. No. 102–386, 106 Stat. 1505 (Oct. 6, 1992).

### H.   Previous Motions

The parties have made the following motions in this action:[3]

1.  Motions to Amend the Pleadings:

    a.  *Plaintiffs' First Motion to Amend Complaint* – Plaintiffs filed an unopposed motion to amend their complaint in August 2022, Dkt. No. 25, which the Court granted, Dkt. No. 26.

    b.  *Plaintiffs' Second Motion to Amend Complaint* – Plaintiffs moved to amend their complaint a second time in June 2023 to add claims relating to the release of Aqueous Film Forming Foam ("AFFF"). Dkt. No. 70.  The Court granted Plaintiffs' leave to file a second amended complaint, Dkt. No. 86, over Defendants' objection, Dkt. No. 78, however, Plaintiffs declined to include allegations relating to AFFF, *see* Dkt. No. 89.

---

[3] For the sake of brevity, this list does not include letter briefs, motions to withdraw, motions to extend briefing deadlines, requests for judicial notice or motions to seal.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

c. *Plaintiffs' Third Motion to Amend Complaint* – Plaintiffs most

recently moved to amend their complaint on May 22, 2025, after the

close of discovery and after the parties filed summary judgment

briefs.  Dkt. No. 185.  Defendants opposed, and the Court denied

Plaintiffs' motion because Plaintiffs failed to meet and confer with

Defendants and because Plaintiffs failed to demonstrate good cause.

Dkt. No. 216.

2. Motions to Dismiss:

a. *Defendants' Motion to Dismiss Second Amended Complaint or Stay*

*Proceedings* – In October 2023, Defendants moved to dismiss, or in

the alternative stay, Plaintiffs' CWA and RCRA claims either pursuant

to the primary jurisdiction doctrine or the *Burford v. Sun Oil*, 319 U.S.

315 (1943), abstention doctrine.  Dkt. No. 90.  Defendants argued this

was appropriate in light of the Hawaii DOH's and the U.S. EPA's

ongoing regulatory enforcement and oversight of releases targeted in

Plaintiffs' complaint.  The Court granted in part and denied in part the

motion, allowing the Plaintiffs' CWA claims to proceed, but staying

the RCRA claims for one year.  Dkt. No. 127.  The Court directed

Plaintiffs to file a third amended complaint.  *Id.*

b. *Defendants' Motion to Dismiss Third Amended Complaint* – In August 2024, Defendants moved to dismiss the Third Amended Complaint on the grounds that Plaintiffs failed to provide adequate pre-suit notice of their CWA claims and that Plaintiffs failed to adequately allege certain ongoing violations of the CWA. Dkt. No. 138. The Court denied Defendants' motion based on notice but did not rule on the adequacy of the pleadings. Dkt. No. 157.

3. Motions for Summary Judgment:

a. *Plaintiffs' Motion for Partial Summary Judgment* – In April 2025, Plaintiffs moved for partial summary judgment with respect to standing and liability over the past releases of petroleum at Hotel and Kilo Piers. Dkt. No. 177. The Court granted the motion in part, finding that certain of the named plaintiffs have standing. Dkt. No. 219. The Court denied the remainder of the motion, finding a dispute of fact as to whether the past discharges were ongoing. *Id.*

b. *Defendants' Motion for Summary Judgment* – Defendants have moved for summary judgment as to the entirety of Plaintiffs' claims. Dkt. No. 182. The Court initially set a hearing for August 22, 2025, Dkt. No. 184, but later vacated the hearing in anticipation of its ruling on Plaintiffs' partial motion for summary judgment, Dkt. No. 218. The

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

Court set a new briefing schedule with supplemental briefing from
Defendants.  Dkt. No. 221.  Briefing is now complete, and the motion
is pending.

4.  Other Motions:

    a.  *Defendants' Motion to Extend Stay* – In May 2025, Defendants moved
to extend the stay of Plaintiffs' RCRA claims by an additional year.
Dkt. No. 180.  The Court granted Defendants' motion in part,
extending the stay by six months to December 2025, and scheduled a
hearing on the remainder of the motion.  Dkt. No. 181.  After hearing
argument from the parties, the Court continued the hearing to
September 23, 2025, and ordered that Plaintiffs could seek
preliminary discovery regarding groundwater remediation under state
and federal administrative orders.  Dkt. No. 213.

    b.  *Plaintiffs' Motion to Compel* – In May 2025, Plaintiffs filed a motion
to compel Defendants to comply with the protective order.  Dkt. No.
192.  After reviewing the briefing, the Court denied Plaintiffs' motion
for failing to comply with the meet-and-confer requirements under
LR7.8 and as moot.  Dkt. No. 214.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

## I.    Witnesses to be Called

The United States intends to call the following four witnesses via declaration:

### 1.  Guy Pasco

Mr. Pasco is a Supervisory General Engineer of the Facilities Division in the Pearl Harbor Fuels Department headquartered at Joint Base Pearl Harbor-Hickam. Mr. Pasco develops short- and long-range programs for maintenance, repair, and construction of the fuel distribution system at the Joint Base.  Mr. Pasco also provides technical and operational support for maintenance, repair, and construction projects.  Mr. Pasco is expected to provide testimony regarding the layout and function of the fueling infrastructure at the Facility; the operation, inspection, maintenance, and repair of the fueling infrastructure; and emergency response procedures.

### 2.  Lieutenant Commander Justin Lemons, U.S. Navy

Lieutenant Commander Lemons is the Fuels Officer at Joint Base Pearl Harbor-Hickam. He is expected to provide testimony on his personal knowledge of the organizational structure, management, and oversight of Fuel Operations at the Joint Base, and maintenance and repair funding sources and process for the Facility.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

### 3. Ted L. Caudill, P.E.

Mr. Caudill is a registered professional engineer who is expected to provide expert testimony and opinions regarding the operational reliability of the Facility.

### 4. Paul B. Summers, P.E., S.E., CPEng, F.ASCE

Mr. Summers is a registered professional engineer, a registered structural engineer, and a Fellow with the American Society of Civil Engineers, who is expected to provide expert testimony and opinions regarding the structural integrity of the Facility.

Defendants reserve the right to identify and call additional percipient witnesses and expand the scope of testimony of the witnesses identified here depending on the testimony presented by Plaintiffs.

## J.    Exhibits, Schedules, and Summaries

Defendants provide a working list of specific documents, as well as summarized categories of exhibits that they intend to present at trial and will identify any additional exhibits to Plaintiffs by the September 8, 2025 deadline.

1.    Release Response Reports and related notices and correspondence between the Navy and the Hawaii DOH regarding the Hotel Pier release detailing actions undertaken by the Navy to identify and respond to that release.

2.    Technical reports and contracts pertaining to the decommissioning of the Hotel Pier defuel line.

3.     Government reports and correspondence regarding the Navy's response to the Kilo Pier release of petroleum products.

4.     Correspondence between the Navy and the DOH and EPA verifying the successful defueling of Red Hill through pipelines at Hotel Pier, reflecting the integrity of those pipelines.

5.     Excerpts from the Navy's Operation, Maintenance, Environmental, and Safety Plan regarding the Navy's operational and inspection procedures for its fueling infrastructure.

6.     Excerpts from the Navy's POL Pipeline Integrity Management Plan regarding the Navy's inspection and testing of its fueling infrastructure.

7.     Navy contracts, proposals, records and other documentation regarding repairs and improvements to Facility infrastructure.

8.     Fueling infrastructure assessment, testing, and inspection reports.

9.     Maps and schematics depicting the facility and the fueling infrastructure.

10.     Excerpts from the April 29, 2022, Final Assessment Report – Assessment of Red Hill Underground Fuel Storage Facility – Pearl Harbor, Hawaii, prepared by Simpson Gumpertz & Herger Inc.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

11.    Fuel System Inspection Report Final Submittal – Fuel Transfer Infrastructure Assessment: Transfer Piping Inspection – UGPH 59 to Hotel Pier prepared by Austin Brockenbrough Engineering Consulting.

12.    Plaintiffs' responses to Defendants' Interrogatories.

13.    Demonstrative exhibits reflecting the Navy's ongoing tracking of maintenance, repairs, compliance and other deliverables at the Facility.

14.    Demonstrative exhibits detailing the organizational structure pertaining to Joint Base fueling operations.

15.    Demonstrative exhibits reflecting the layout of fueling infrastructure at the Facility.

Defendants reserve their right to introduce other documents previously produced or identified, particularly as it awaits clarification from Plaintiffs as to what witnesses they intend to call for trial. Defendants expect that the parties can stipulate to the admissibility of most, if not all, of the exhibits detailed above. However, Defendants are prepared to prove the admissibility of any documents Plaintiffs challenge. Guy Pasco can also speak to certain exhibits.

## K.    Further Discovery or Motions

Fact discovery closed on December 10, 2024, and expert discovery closed on April 28, 2025.

### L. Stipulations

Defendants have asked that Plaintiffs stipulate to the facts identified in Section D and will confer with them as necessary. Those facts are not reasonably in dispute and Plaintiffs admitted them in their summary judgment briefing. Defendants will also meet and confer as necessary with Plaintiffs to stipulate to the admissibility of exhibits.

### M. Amendments, Dismissals

Plaintiffs last amended their operative complaint on June 13, 2024, Dkt. No. 130. The deadline to amend the pleadings passed on April 24, 2024. Dkt. No. 119. Plaintiffs moved to amend their complaint on May 22, 2025, Dkt. No. 185, and this Court denied that motion. Dkt. No. 212; 216. No further amendments should be permitted. The Court may dismiss Plaintiffs' claim in whole or in part in ruling on Defendants' motion for summary judgment.

### N. Settlement Discussions

The parties have engaged in settlement discussions throughout this case, including a five-month settlement period from November 7, 2022, to March 29, 2023. The Navy made document productions for those efforts and the Court-hosted confidential telephonic settlement conferences in February 2023, Dkt. No. 45, 46, 48, and a telephonic discussion held on February 6, 2025. In May 2025, Defendants attempted to engage with Plaintiffs regarding settlement in advance

with a settlement conference in June 2025.  Plaintiffs were unable to engage due to competing obligations and instead sought to continue the conference.  Dkt. No. 190.  The Court vacated the settlement conference, observing that "[g]iven discussions with the Court over the last six months, it appears that further settlement discussions would be unproductive."  Dkt. No. 191.

Defendants remain willing to discuss settlement but expect that further negotiations likely will not be productive.

## O.  Agreed Statement

Defendants believe that many facts in this matter are not reasonably in dispute and intend to propose a stipulation regarding the information in Section D above to simplify the issues and evidence to be presented at trial.  Defendants understand that Plaintiffs likewise intend to propose to stipulate to certain facts.

## P.  Bifurcation

No bifurcation of any issues has been proposed to date, nor do Defendants believe such is necessary.

## Q.  Reference to Master or Magistrate Judge

Reference to a master or magistrate judge does not appear necessary.

## R.    Appointment and Limitation of Experts

Appointment of experts does not appear necessary.  Defendants, however,

reserve all rights to seek the limitation or exclusion of specific testimony by

Plaintiffs' purported expert witness.

## S.    Trial

The non-jury trial is scheduled to begin on October 20, 2025 at 9:00am.

Dkt. No. 144.

## T.    Estimate of Trial Time

Given the limited number of witnesses identified by the parties, the process

of direct testimony by declaration, and what Defendants believe are a narrow set of

issues for this Court to resolve at trial, Defendants estimate that five trial days

would be adequate, assuming a daily trial schedule of 8:30am to 2:00pm without a

lunch break.

## U.    Claims of Privilege or Work Product

Defendants are not claiming that any information required to be stated by

Local Rule 16.4(b) is covered by the work product doctrine or privilege.

## V.    Miscellaneous

As stated in Defendants' Trial Issues Memorandum, Dkt. No. 231 at 4,

Defendants request that this Court allow them to submit their declarations in lieu of

direct examination ten days after Plaintiffs file theirs, modifying the current

simultaneous submission procedure.  Plaintiffs bear the burden of proof, and

Defendants' evidence and case are necessarily dependent on issues and evidence

Plaintiffs advance.  That would be the normal course with live testimony.  Because

Plaintiffs' theories of the case have and continue to evolve—even throughout the

summary judgment briefing and in its Status Conference Memorandum—it is not

clear what Plaintiffs' witnesses will testify about. Staggered written direct

testimony will allow Defendants to tailor their written direct testimony according

to Plaintiffs' declarations.  Staggering will streamline trial, increase judicial

efficiency, reduce the potential for surprise, eliminate presentation of unnecessary

or duplicative testimony, and minimize objections.  *See* Fed. R. Civ. P. 1.  Counsel

for the parties conferred over this issue on August 28, 2025, and counsel for

Plaintiffs advised that they will consider Defendants' proposal.

Separately, Defendants have designated certain documents as confidential

pursuant to the protective order and are working to redact documents they intend to

use at trial.  Defendants will work with Plaintiffs regarding the handling of such

materials during trial.  The parties agreed in July that Plaintiffs would identify any

portions of confidential documents they intend to present at trial so that Defendants

could then identify which portions of those documents to redact.  Late Friday,

August 29, 2025, Plaintiffs identified the first set of confidential documents that

they want Defendants to review, which covered several thousand pages of

materials.  During a video conference on September 2, 2025, counsel for Plaintiffs

advised that they will identify additional documents this week.

Dated:  September 2, 2025                Respectfully submitted,

                                        ADAM R.F. GUSTAFSON
                                        Acting Assistant Attorney General
                                        Environment & Natural Resources Division
                                        United States Department of Justice

                                        /s/ Alexander M. Purpuro
                                        ALEXANDER M. PURPURO
                                        ALEX J. HARDEE
                                        BRYAN HARRISON
                                        DAVID MITCHELL
                                        Environmental Defense Section

                                        KENNETH M. SORENSON
                                        Acting U.S. Attorney
                                        District of Hawaii

                                        DANA A. BARBATA
                                        Assistant U.S. Attorney

                                        *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 2, 2025, and by the methods of service noted below, a true and correct copy of the foregoing Defendants' Motion for Summary Judgment and the accompanying Memorandum of Law in Support of Defendants' Motion for Summary Judgment was served on the following at their last known addresses:

**<u>Served Electronically through CM/ECF:</u>**

Daniel Gordon Cooper, daniel@sycamore.law

Jesse Colorado Swanhuyser, jesse@sycamore.law

Philip L. Gregory, pgregory@gregorylawgroup.com

William A. Harrison, william@harrisonlawcenter.com

Jason R. Flanders, jrf@atalawgroup.com

*Attorneys for Plaintiffs*

/s/ Alexander M. Purpuro
ALEXANDER M. PURPURO

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT