ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

BRYAN J. HARRISON (FL #106379)
DAVID D. MITCHELL (IL #6302250)
ALEX J. HARDEE (NC #56321)
ALEXANDER M. PURPURO (FL #1025872)
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 353-5230 (Purpuro)
alexander.purpuro@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| WAI OLA ALLIANCE, *et al.*, | Case No. 1:22-cv-272-LEK-RT |
| Plaintiffs, | **DEFENDANTS' PRETRIAL CONFERENCE STATEMENT** |
| v. | <u>District Judge</u>: Leslie E. Kobayashi<br><u>Magistrate Judge</u>: Rom A. Trader |
| THE UNITED STATES DEPARTMENT OF DEFENSE, *et al.*, | |
| Defendants. | <u>Pretrial Conference</u>: February 3, 2026 at 9am |
| | <u>Final Pretrial Conference</u>: March 17, 2026 at 10am |

# TABLE OF CONTENTS

A.    Party ...................................................................................................1

B.    Jurisdiction and Venue .....................................................................1

C.    Substance of Action .........................................................................1

D.    Undisputed Facts ..............................................................................3

E.    Disputed Facts ..................................................................................8

F.    Relief Sought ....................................................................................9

G.    Points of Law ..................................................................................10

     a.    Clean Water Act Liability in Citizen Suits for
          Unpermitted Discharges .........................................................10

          i.    CWA Liability - Generally .........................................10

          ii.    Ongoing Discharges ...................................................11

     b.    Groundwater Discharges ........................................................13

     c.    Remedy ....................................................................................14

H.    Previous Motions ............................................................................15

I.    Witnesses to be Called ....................................................................19

     1.    Guy Pasco............................................................................19

     2.    Ted L. Caudill, P.E................................................................20

     3.    Paul B. Summers, P.E., S.E., CPEng, F.ASCE ...................20

J.     Exhibits, Schedules, and Summaries ...................................................... 20

K.     Further Discovery or Motions ............................................................... 23

L.     Stipulations .......................................................................................... 23

M.    Amendments, Dismissals ....................................................................... 23

N.     Settlement Discussions .......................................................................... 23

O.     Agreed Statement .................................................................................. 24

P.     Bifurcation ........................................................................................... 24

Q.     Reference to Master or Magistrate Judge .............................................. 24

R.     Appointment and Limitation of Experts ................................................ 25

S.     Trial ..................................................................................................... 25

T.     Estimate of Trial Time .......................................................................... 25

U.     Claims of Privilege or Work Product ..................................................... 25

V.     Miscellaneous ....................................................................................... 25

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

## A.    Party

This statement is filed on behalf of Defendants Department of the Navy, Department of War, Joint Task Force Red Hill, Navy Region Hawaii, and Navy Facilities Engineering Systems Command – Hawaii.

## B.    Jurisdiction and Venue

Plaintiffs brought this case under the Clean Water Act ("CWA").[1]  As relevant here, the CWA citizen suit provision authorizes civil actions in district courts against any person, including the United States, "who is alleged to be in violation of . . . an effluent standard or limitation under [the CWA]."  33 U.S.C. § 1365(a)(1).  The citizen suit provision likewise provides that "[t]he district courts shall have jurisdiction . . . to enforce such an effluent standard or limitation."  *Id.*  Defendants do not dispute that this Court has jurisdiction over this action.

Defendants likewise do not dispute that venue is proper in the District of Hawaii.  28 U.S.C. § 1402(b).

## C.    Substance of Action

This is a CWA citizen suit alleging Defendants violated the CWA prohibition against discharging pollutants to waters of the United States without a permit.  *See*

---

[1] Plaintiffs also asserted a claim under the Resource Conservation Recovery Act ("RCRA") seeking relief with respect to releases of fuel at the Red Hill Bulk Fuel Storage Facility.  Plaintiffs' RCRA claim is presently stayed and the parties stipulated that the releases from the Red Hill Facility are not part of the CWA claim.  *See* Dkt. No. 127, 133.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

33 U.S.C. § 1311(a).  Specifically, Plaintiffs allege that Defendants are discharging petroleum products to navigable waters from part of the Joint Base Pearl Harbor-Hickam fuel system to Pearl Harbor and Halawa Stream.  Plaintiffs' CWA claim is limited to the "Facility," which consists of aboveground storage tanks, aboveground and underground pipelines between the underground pumphouse and storage tanks, the fuel oil reclamation facility, and the fueling points at Hotel, Kilo, Sierra, Mike, and Bravo Piers.

Plaintiffs contend both that there are ongoing discharges of pollutants from the Facility and that there is a likelihood that past discharges will recur. Defendants moved for summary judgment as to the entirety of Plaintiffs' CWA claim and Plaintiffs filed a motion for partial summary judgment.  *See* Dkt. No. 177, 182.  On July 31, 2025, the Court granted in part and denied in part Plaintiffs' motion, determining that Plaintiffs "are not entitled to summary judgment on the issue of liability for the portion of the CWA claim based on the Self-Reported Violations."[2]  Dkt. No. 219 at 30.  On September 29, 2025, the Court denied Defendants' motion but effectively determined that there remain only two issues as to liability for trial.

---

[2] The Court granted Plaintiffs' motion "insofar as this Court concludes that the Alliance, Doktor, Helelā, Frank, and Niheu have standing to pursue the CWA claim in this case[,]" but denied it in all other respects.  Dkt. No. 219 at 30.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

With respect to Plaintiffs' first theory of liability—that there are ongoing discharges of pollutants at the Facility— the Court determined that "there is a genuine issue of material fact as to *one* of Plaintiffs' theories of an ongoing violation," Dkt. No. 244 at 26-27 (emphasis added), that is, Plaintiffs' theory that "the leaking collar near the truck-fueling station constitutes an ongoing discharge for purposes of the CWA[.]" *Id.* at 25-26. The Court rejected Plaintiffs' other theories of liability based on ongoing violations, finding, as a matter of law, that the Navy's "Self-Reported Violations"—i.e., the two past releases at Hotel and Kilo Piers—do not constitute ongoing discharges, *id.* at 23-24, and also finding that any releases described on a "Spill Spreadsheet" cited by Plaintiffs are not evidence of ongoing discharges, *id.* at 26.

As to Plaintiffs' second theory of liability, the Court found "that there are genuine issues of material fact regarding the issue of whether prior intermittent discharges of fuel products at the Facility are reasonably likely to recur." *Id.* at 28.

### D. Undisputed Facts

The following facts are law of the case based on the Court's September 29, 2025 summary judgment order, admitted by Plaintiffs, *see* Dkt. No. 226, or not reasonably in dispute[3]:

---

[3] Defendants anticipate the parties filing a stipulation with the Court setting forth all or most of these facts.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

1.     On March 17, 2020, the Navy reported to the Hawaii Department of Health ("DOH") a release of oil from the Hotel Pier Area into Pearl Harbor and Halawa Stream after observing fuel seeping into Pearl Harbor and Halawa Stream.

2.     DOH issued a "Notice of Interest in Release or Threatened Release of Hazardous Substances" requiring the Navy to locate and stop the source of the Hotel release, remediate the environment, and submit additional pipeline testing results to DOH.

3.     In response to the Hotel Pier release and consistent with DOH's direction, the Navy deployed divers, installed booms to capture free product, and dug interceptor trenches and more than 20 observation wells on land to search for the source of the leak in the soil and groundwater and to capture any free product.

4.     The Navy initially believed that a potential source of the Hotel Pier release was residual contamination from an existing plume in the same area because the fuel appeared weathered, but its investigation revealed that the Hotel Pier release was a mixture of old and new fuel.

5.     The land adjacent to Hotel Pier historically had been used for petroleum storage and conveyance and included a valve station, underground and aboveground storage tanks, and pumping stations.

6.     After testing its pipes, the Navy discovered that an underground defuel pipeline had leaked and released fuel into the soil, which comingled with

the existing plume, oversaturated the soil, and caused the mixture to migrate and seep out of cracks in the sheet-pile of the seawall under and around Hotel Pier.

7.  On January 23, 2021, the Navy isolated the defuel pipeline, preventing it from receiving fuel; it is currently isolated and out of service and is in the process of being permanently decommissioned; all associated riser valves have been removed, all risers have been filled with concrete, and all riser piping has been capped and seal welded.

8.  Following the isolation of the defuel pipeline, the amount of fuel recovered from the environment drastically decreased and by August 2021, the defuel pipeline ceased leaking altogether.

9.  The Navy concluded that the source of the Hotel Pier release was the defuel pipeline which had been taken out of commission.

10.  DOH concurred with the Navy's assessment regarding the source of the Hotel release, noted its plan to transition from "joint emergency response" to "state oversight," and directed the Navy to submit a confirmed release form under Hawaii's underground storage tank ("UST") regulations, which the Navy promptly did.

11.  In July 2021, fuel was released from a pipeline at Kilo Pier into a boomed area for a period of one week.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

12.     The Navy deployed absorbent pads and skimmers to recover the fuel from Kilo Pier and reported the release, which was contained within a boomed area, to DOH under the state's UST regulations.

13.     The defuel line at Hotel Pier was the source of the Hotel Pier release and the defuel line ceased leaking by August 2021.

14.     Fuel piping beneath Kilo Pier was isolated, drained, and removed from service on July 16, 2021, and those pipelines have been out of service since that date.

15.     Fuel piping beneath Mike and Bravo Piers was isolated, drained, and removed from service on January 14, 2022.

16.     Kilo, Bravo, and Mike Pier fuel piping will remain empty, isolated, and out-of-service until all necessary repairs and replacements are complete.

17.     The Navy is planning to replace all the piping and supports under Kilo Pier and a contract was awarded for this work on June 16, 2024, with preliminary work in progress and pipeline replacement expected to be completed by June 2026.

18.     Contract proposals for repair work at Bravo and Mike Piers have been issued.

19.     The Upper Tank Farm is situated inland of Pearl Harbor and consists of six aboveground storage tanks that store fuel before it is routed by pipeline to the operational piers, and all six tanks sit within a secondary containment system

designed to capture any inadvertently released fuel and prevent any release to the environment.

20.    The active fuel pipelines at Hotel Pier are contained within a concrete trough on the topside of the pier deck, which provides secondary containment designed to capture any inadvertently released fuel and prevent any release to the environment.

21.    Since 2020, the Navy has completed significant upgrades and repairs at Hotel Pier as part of the 253 repairs performed prior to defueling the Red Hill Bulk Fuel Storage Facility; those repairs were verified by EPA and DOH.

22.    In 2023, the Navy successfully defueled about 104 million gallons of fuel from the Red Hill Bulk Fuel Storage Facility that was directed through the fueling infrastructure at Hotel Pier for defueling.

23.    Annual pipeline pressure testing was successfully completed on the active pipelines at Hotel Pier and Sierra Pier in May and June 2025 and all piping passed the testing.

24.    The Navy awarded contracts in 2025 for demolition of the defueling pipeline at Hotel Pier and for replacement of thermal relief valves and piping between Hotel Pier and valve stations, with work presently underway and contract completion expected by September 2027.

The parties are in the process of negotiating stipulations to facts that are not in dispute to narrow the remaining issues for trial.

### E.    Disputed Facts

Defendants moved for summary judgment as the entirety of Plaintiffs' Clean Water Act claim.  On September 29, 2025, this Court denied Defendants' motion and based on the Court's order, the following facts remain in dispute:

1.    Whether there is an ongoing leak of fuel from a flange band on a pipe near a truck fueling station at the Joint Base.

2.    If so, whether fuel leaking from the flange band is being discharged into a water of the United States.

3.    Whether there are any structural defects at the Facility such that prior fuel releases are reasonably likely to recur and, if so, whether such a release would result in a violation of the CWA.

4.    Whether the Navy's operation of the Facility is reasonably likely to result in a recurring fuel release and, if so, whether such a release would result in a violation of the CWA.

5.    If a prior discharge of fuel from the Facility to waters of the United States is reasonably likely to recur, whether there are any further measures— beyond the extensive repairs and replacements underway—Defendants could undertake to further reduce such likelihood of recurrence.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

**F.    Relief Sought**

Defendants request that this Court find that:

1.      There are no ongoing releases of pollutants from the Facility.

2.      Any past releases of pollutants from the Facility are not reasonably likely to recur due to the Navy's extensive repair work, testing and inspection of infrastructure, ongoing tracking of maintenance and repairs, and deactivation of relevant fueling infrastructure until needed repairs are completed.

3.      If the Court finds that there are ongoing discharges at the Facility or that past discharges are reasonably likely to recur, Plaintiffs will not suffer an irreparable injury based on the discharges proven at trial.

4.      If the Court finds that there are ongoing discharges at the Facility or that past discharges are reasonably likely to recur, narrowly tailor the remedy to what is necessary to abate ongoing violations found, necessary to alleviate a proven irreparable injury to Plaintiffs, and justified based on balancing the equities between the parties considering the public interest.

5.      If the Court finds that the Navy is liable under the CWA, declare that the United States has not waived sovereign immunity for punitive civil penalties, to the extent that Plaintiffs request such penalties.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

### G.   Points of Law

   a.   <u>Clean Water Act Liability in Citizen Suits for Unpermitted Discharges</u>

   i.   *CWA Liability – Generally*

Citizens may sue an agency of the United States that is "in violation of . . .

an effluent standard or limitation," including the "discharge of any pollutant" into a

water of the United States except as in compliance with the CWA.  33 U.S.C.

§§ 1365(a)(1), (f), 1311(a).  Plaintiff bears the burden of proving any such

violation. *Comm. to Save Mokelumne River v. E. Bay Mun. Util. Dist.*, 13 F.3d 305,

308 (9th Cir. 1993) (citation omitted).  The plaintiff must show that the defendant

"(1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from (5) a

point source." *Id.*

The CWA defines these terms. To "discharge" means to add any pollutant to

"navigable waters from any point source."  33 U.S.C. § 1362(12)(A).  The term

"pollutant" is defined broadly and includes fuel.  *Id.* § 1362(6); *see also United

States v. Curtis*, 988 F.2d 946, 947 (9th Cir. 1993).  "Navigable waters" are "the

waters of the United States, including the territorial seas."  *Id.* § 1362(7).  "Point

source" is defined as "any discernible, confined and discrete conveyance, including

but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure,

container, rolling stock, concentrated animal feeding operation, or vessel or other

floating craft, from which pollutants are or may be discharged."  *Id.* § 1362(14).

ii. *Ongoing Discharges*

Despite this broad language, the CWA has limits for citizen suits. In addition to the requirement that a plaintiff provide adequate notice of the violations it may assert in a citizen suit complaint, *see* 33 U.S.C. § 1365(b) and 40 C.F.R. Part 135, the statute "does not permit citizen suits for wholly past violations"; rather, the plaintiff must prove that there are "ongoing violations." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 64 (1987). A plaintiff can prove that there are ongoing violations "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Sierra Club v. Union Oil Co. of Cal.*, 853 F.2d 667, 671 (9th Cir. 1988) (quoting *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171-72 (4th Cir. 1988)). "Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition." *Id.* (quoting *Chesapeake Bay Found.*, 844 F.2d at 172).

In assessing whether there is a likelihood of repetition "the district court may wish to consider whether remedial actions were taken to cure violations, the ex ante probability that such remedial measures would be effective, and any other evidence presented during the proceedings that bears on whether the risk of defendant's continued violation had been completely eradicated when citizen-

plaintiffs filed suit." *Id.* (quoting *Chesapeake Bay Found.*, 844 F.2d at 172) (emphasis removed).  Moreover, a plaintiff must demonstrate with specificity that a past discharge will recur, not simply speculate generally that an actor who discharged previously might continue to do so.  *See, e.g., Atl. States Legal Found. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 n.13 (11th Cir. 1990) ("The law does not require a defendant to show that there is no conceivable chance that a future violation will occur, but only that 'there is no reasonable expectation that the wrong will be repeated.'"); *Day, LLC v. Plantation Pipe Line Co.*, 315 F. Supp. 3d 1219, 1240 (N.D. Ala. 2018) (rejecting the plaintiffs' effort to "wield the citizen-suit provision of the CWA as a hammer to address any and all effects of the pipeline leak rather than the fine scalpel that it is"); *Pro-Built Dev. LLC v. Delta Oil Servs. Inc.*, No. 7:21-cv-1477, 2024 WL 5056625, at *13 (N.D. Ala. Dec. 10, 2024) (finding that the mere fact that the defendant continued to operate its business was insufficient to show that the defendant was reasonably likely to violate the CWA again).

In sum, citizen enforcement of the CWA is forward-looking: Plaintiffs bear the burden of proving "'either continuous or intermittent violation' so that 'a reasonable likelihood exists that the defendant will continue to pollute in the future.'"  *See Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 158 F.4th 1052,

1058 (9th Cir. 2025) (alterations omitted) (quoting *Gwaltney*, 484 U.S. at 57).  The

CWA does not impose liability for wholly past violations.  *Id.*

      b.  <u>Groundwater Discharges</u>

The regulations defining the scope of navigable waters covered under the

Clean Water Act have never included groundwater.  88 Fed. Reg. 2004, 3105 (Jan.

18, 2023).  Thus, mere evidence of discharges to groundwater or residual pollutants

that remain in groundwater from wholly past discharges is insufficient to establish

liability.  The CWA imposes liability only for "direct discharge[s] from a point

source into navigable waters or when there is the *functional equivalent of a direct

discharge*."  *Cnty. of Maui v. Haw. Wildlife Fund*, 590 U.S. 165, 183 (2020)

(emphasis in original). In other words, an unpermitted discharge occurs under the

CWA "when a point source directly deposits pollutants into navigable waters, or

when the discharge reaches the same result through roughly similar means."  *Id.* at

183-84.  Discharges to groundwater alone cannot establish liability in a citizen-suit

alleging unpermitted discharges because groundwater is not a water of the United

States.  *See id.* at 171, 184.

When a plaintiff alleges that discharges from a point source travel through

groundwater before reaching a water of the United States, the plaintiff must prove

such a discharge is the functional equivalent of a direct discharge to establish

liability under the CWA.  *See id.*  Functional equivalence is a fact-intensive inquiry

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

based on site-specific analysis. *See id.* at 184-85. Several factors may be relevant

to the functional equivalence inquiry:

> (1) transit time, (2) distance traveled, (3) the nature of the material
> through which the pollutant travels, (4) the extent to which the pollutant
> is diluted or chemically changed as it travels, (5) the amount of
> pollutant entering the navigable waters relative to the amount of the
> pollutant that leaves the point source, (6) the manner by or area in which
> the pollutant enters the navigable waters, (7) the degree to which the
> pollution (at that point) has maintained its specific identity.

*Id.* The applicable factors may differ for specific cases, but the plaintiff bears the

burden to prove that a discharge to groundwater reaches waters of the United

States and is the functional equivalent of a direct discharge. *See id.*; *Cmty. Ass'n*

*for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir.

2002) (plaintiff bears burden to prove ongoing CWA violations).

    c.   Remedy

    Even if the Court finds that Defendants violated the CWA, the Court can

only order a remedy to address an ongoing violation. Plaintiffs request injunctive

relief to "order engineering best practice operations, testing, maintenance, tracking,

and accountability for the vast petroleum infrastructure at the Facility." Dkt. No.

232 at 4. But "'[a] request for injunctive relief remains live' only when a 'present

harm' is left to enjoin" and "'[p]ast exposure to illegal conduct' is insufficient."

*Coastal Env't Rts. Found.*, 158 F.4th at 1060 (quoting *Bayer v. Neiman Marcus*

*Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017)). Accordingly, there is no basis for

"injunctive relief for wholly past violations." *See id.* (citing *Gwaltney*, 484 U.S. at 59).

Moreover, relief should be tailored only to that which is necessary to enforce the CWA limitation being violated, necessary to alleviate a proven irreparable injury to Plaintiffs, and justified based on balancing the equities between the parties considering the public interest. 33 U.S.C. § 1365(a) (providing jurisdiction "to enforce such an effluent standard or limitation" under the CWA); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982). In the event the Court does find the Navy liable for ongoing violations, any punitive civil penalties Plaintiffs seek are not available because the United States has not waived sovereign immunity for them. *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 627 (1992), *abrogated on other grounds by* Federal Facility Compliance Act of 1992, Pub. L. No. 102–386, 106 Stat. 1505 (Oct. 6, 1992).

## H.   Previous Motions

The parties have made the following motions in this action:[4]

---

[4] For the sake of brevity, this list does not include letter briefs, motions to withdraw, motions to extend briefing deadlines, requests for judicial notice, motions to seal, extension requests, and motions relating to the 2025 lapse in government funding.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

1. Motions to Amend the Pleadings:

   a. *Plaintiffs' First Motion to Amend Complaint* – Plaintiffs filed an

   unopposed motion to amend their complaint in August 2022, Dkt. No.

   25, which the Court granted, Dkt. No. 26.

   b. *Plaintiffs' Second Motion to Amend Complaint* – Plaintiffs moved to

   amend their complaint a second time in June 2023 to add claims

   relating to the release of Aqueous Film Forming Foam ("AFFF").

   Dkt. No. 70.  The Court granted Plaintiffs' leave to file a second

   amended complaint, Dkt. No. 86, over Defendants' objection, Dkt.

   No. 78, however, Plaintiffs declined to include allegations relating to

   AFFF, *see* Dkt. No. 89.

   c. *Plaintiffs' Third Motion to Amend Complaint* – Plaintiffs most

   recently moved to amend their complaint on May 22, 2025, after the

   close of discovery and after the parties filed summary judgment

   briefs.  Dkt. No. 185.  Defendants opposed, and the Court denied

   Plaintiffs' motion because Plaintiffs failed to meet and confer with

   Defendants and because Plaintiffs failed to demonstrate good cause.

   Dkt. No. 216.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

2.  Motions to Dismiss:

   a.  *Defendants' Motion to Dismiss Second Amended Complaint or Stay Proceedings* – In October 2023, Defendants moved to dismiss, or in the alternative stay, Plaintiffs' CWA and RCRA claims either pursuant to the primary jurisdiction doctrine or the *Burford v. Sun Oil*, 319 U.S. 315 (1943), abstention doctrine.  Dkt. No. 90.  Defendants argued this was appropriate in light of the Hawaii DOH's and the U.S. EPA's ongoing regulatory enforcement and oversight of releases targeted in Plaintiffs' complaint.  The Court granted in part and denied in part the motion, allowing the Plaintiffs' CWA claims to proceed, but staying the RCRA claims for one year.  Dkt. No. 127.  The Court directed Plaintiffs to file a third amended complaint.  *Id.*

   b.  *Defendants' Motion to Dismiss Third Amended Complaint* – In August 2024, Defendants moved to dismiss the Third Amended Complaint on the grounds that Plaintiffs failed to provide adequate pre-suit notice of their CWA claims and that Plaintiffs failed to adequately allege certain ongoing violations of the CWA.  Dkt. No. 138.  The Court denied Defendants' motion, ruling that Plaintiffs' notice letter was sufficient, but declining to address Defendants' failure to state a claim argument.  Dkt. No. 157.

3.  Motions for Summary Judgment:

   a.  *Plaintiffs' Motion for Partial Summary Judgment* – In April 2025,
   Plaintiffs moved for partial summary judgment with respect to
   standing and liability over the past releases of petroleum at Hotel and
   Kilo Piers.  Dkt. No. 177.  The Court granted the motion in part,
   finding that certain of the named plaintiffs have standing.  Dkt. No.
   219.  The Court denied the remainder of the motion, finding a dispute
   of fact as to whether the past discharges were ongoing.  *Id.*

   b.  *Defendants' Motion for Summary Judgment* – Defendants moved for
   summary judgment as to the entirety of Plaintiffs' CWA claims.  Dkt.
   No. 182.  The Court denied the motion, finding that there were
   disputed issues of fact as to one of Plaintiffs' theories of an ongoing
   CWA violation and Plaintiffs' theory that intermittent violations are
   likely to recur.  Dkt. No. 244.

4.  Other Motions:

   a.  *Defendants' Motion to Extend Stay* – In May 2025, Defendants moved
   to extend the stay of Plaintiffs' RCRA claims by an additional year.
   Dkt. No. 180.  The Court initially granted Defendants' motion in part,
   extending the stay by six months to December 2025, and scheduled a
   hearing on the remainder of the motion.  Dkt. No. 181.  After two

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

hearings and the submission of supplemental briefing, the Court

granted the remainder of Defendants' motion and stayed Plaintiffs'

RCRA claims until June 2026.  Dkt. No. 253.

b. *Plaintiffs' Motion to Compel* – In May 2025, Plaintiffs filed a motion

to compel Defendants to comply with the protective order.  Dkt. No.

192.  After reviewing the briefing, the Court denied Plaintiffs' motion

for failing to comply with the meet-and-confer requirements under

LR7.8 and as moot.  Dkt. No. 214.

## I.    Witnesses to be Called

The United States intends to call the following three witnesses via

declaration:

### 1. Guy Pasco

Mr. Pasco is a Supervisory General Engineer of the Facilities Division in the

Pearl Harbor Fuels Department headquartered at Joint Base Pearl Harbor-Hickam.

Mr. Pasco develops short- and long-range programs for maintenance, repair, and

construction of the fuel distribution system at the Joint Base.  Mr. Pasco also

provides technical and operational support for maintenance, repair, and

construction projects.  Mr. Pasco is expected to provide testimony regarding the

layout and function of the fueling infrastructure at the Facility; organization and

responsibilities of the Joint-Base Fuels Department; the operation, inspection,

maintenance, and repair of the fueling infrastructure, including funding sources; compliance tracking systems and procedures; and emergency response procedures.

### 2. Ted L. Caudill, P.E.

Mr. Caudill is a professional engineer (retired) who is expected to provide expert testimony and opinions regarding the operational reliability of the Facility.

### 3. Paul B. Summers, P.E., S.E., CPEng, F.ASCE

Mr. Summers is a registered professional engineer, a registered structural engineer, and a Fellow with the American Society of Civil Engineers, who is expected to provide expert testimony and opinions regarding the structural integrity of the Facility.

Defendants reserve the right to identify and call additional percipient witnesses and expand the scope of testimony of the witnesses identified here depending on the testimony presented by Plaintiffs and whether the parties are able to come to an agreement on certain stipulations.

### J. Exhibits, Schedules, and Summaries

Defendants intend to rely on the following exhibits:

1. Release Response Reports and related notices and correspondence between the Navy and the Hawaii DOH regarding the Hotel Pier release detailing actions undertaken by the Navy to identify and respond to that release.

20

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

2.      Technical reports and contracts pertaining to the decommissioning of the Hotel Pier defuel line.

3.      Government reports and correspondence regarding the Navy's response to the Kilo Pier release of petroleum products.

4.      Correspondence between the Navy and the DOH and EPA verifying the successful defueling of Red Hill through pipelines at Hotel Pier, reflecting the integrity of those pipelines.

5.      Excerpts from the Navy's Operation, Maintenance, Environmental, and Safety Plan regarding the Navy's operational and inspection procedures for its fueling infrastructure.

6.      Excerpts from the Navy's Petroleum, Oil, and Lubricant(s) Pipeline Integrity Management Plan regarding the Navy's inspection and testing of its fueling infrastructure.

7.      Excerpts from the 2024 Spill Prevention, Control, and Countermeasures Plan.

8.      Navy contracts, proposals, records and other documentation regarding repairs and improvements to Facility infrastructure.

9.      Fueling infrastructure assessment, testing, and inspection reports.

10.      Maps and schematics depicting the Facility and the fueling infrastructure.

11.     Excerpts from the April 29, 2022, Final Assessment Report –
Assessment of Red Hill Underground Fuel Storage Facility – Pearl Harbor, Hawaii,
prepared by Simpson Gumpertz & Herger Inc.

12.     Fuel System Inspection Report Final Submittal – Fuel Transfer
Infrastructure Assessment: Transfer Piping Inspection – UGPH 59 to Hotel Pier
prepared by Austin Brockenbrough Engineering Consulting.

13.     Plaintiffs' responses to Defendants' Interrogatories.

14.     Exhibits detailing the organizational structure pertaining to Joint Base
fueling operations.

15.     Demonstrative exhibits reflecting the Navy's ongoing tracking of
maintenance, repairs, compliance and other deliverables at the Facility.

16.     Demonstrative exhibits reflecting the layout of fueling infrastructure
at the Facility.

Defendants reserve their right to introduce other documents previously
produced or identified, particularly as it awaits clarification from Plaintiffs as to
what witnesses they intend to call for trial.  Defendants expect that the parties can
stipulate to the admissibility of most, if not all, of the exhibits detailed above.
However, Defendants are prepared to prove the admissibility of any documents
Plaintiffs challenge.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

## K.  Further Discovery or Motions

Fact discovery closed on December 10, 2024, and expert discovery closed

on April 28, 2025.

## L.  Stipulations

Defendants are conferring with Plaintiffs regarding stipulations of facts and

law regarding facts and issues resolved in this Court's summary judgment orders,

admitted to in summary judgment briefing, or which are otherwise not reasonably

in dispute.

Defendants will also meet and confer as necessary with Plaintiffs to stipulate

to the admissibility of exhibits.

## M.  Amendments, Dismissals

Plaintiffs last amended their operative complaint on June 13, 2024, Dkt. No.

130.  The deadline to amend the pleadings passed on April 24, 2024.  Dkt. No. 119.

Plaintiffs moved to amend their complaint on May 22, 2025, Dkt. No. 185, and this

Court denied that motion.  Dkt. No. 212; 216.  No further amendments should be

permitted.

## N.  Settlement Discussions

The parties have engaged in settlement discussions throughout this case,

including a five-month settlement period from November 7, 2022, to March 29,

2023.  The Navy made document productions for those efforts and the Court-

23

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

hosted confidential telephonic settlement conferences in February 2023, Dkt. No.

45, 46, 48, and a telephonic discussion held on February 6, 2025. In May 2025,

Defendants attempted to engage with Plaintiffs regarding settlement in advance of

a settlement conference in June 2025. Plaintiffs stated they were unable to engage

due to competing obligations and instead sought to continue the conference. Dkt.

No. 190. The Court vacated the settlement conference, observing that "[g]iven

discussions with the Court over the last six months, it appears that further

settlement discussions would be unproductive." Dkt. No. 191.

Defendants remain willing to discuss settlement but expect that further

negotiations likely will not be productive.

## O.   Agreed Statement

Defendants believe that many facts in this matter are not reasonably in

dispute and are conferring with Plaintiffs regarding stipulations to simplify the

issues and evidence to be presented at trial.

## P.   Bifurcation

No bifurcation of any issues has been proposed to date, nor do Defendants

believe such is necessary.

## Q.   Reference to Master or Magistrate Judge

Reference to a master or magistrate judge does not appear necessary.

### R.  Appointment and Limitation of Experts

Appointment of experts does not appear necessary.  Defendants, however, reserve all rights to seek the limitation or exclusion of specific testimony by Plaintiffs' purported expert witness.

### S.  Trial

The non-jury trial is scheduled to begin on March 31, 2026 at 9:00am.  Dkt. No. 260.

### T.  Estimate of Trial Time

Given the limited number of witnesses identified by the parties, the process of direct testimony by declaration, and what Defendants believe are a narrow set of issues for this Court to resolve at trial, Defendants estimate that four trial days would be adequate, assuming a daily trial schedule of 8:30am to 2:00pm without a lunch break.

### U.  Claims of Privilege or Work Product

Defendants are not claiming that any information required to be stated by Local Rule 16.4(b) is covered by the work product doctrine or privilege.

### V.  Miscellaneous

Defendants have no additional matters to raise at this time.

Defs.' Pretrial Conference Statement
Civil No. 22-00272 LEK-RT

Dated:  January 27, 2026          Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

/s/ Alexander M. Purpuro
ALEXANDER M. PURPURO
ALEX J. HARDEE
BRYAN HARRISON
DAVID MITCHELL
Environmental Defense Section

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 27, 2026, and by the methods of service noted below, a true and correct copy of the foregoing Defendants' Motion for Summary Judgment and the accompanying Memorandum of Law in Support of Defendants' Motion for Summary Judgment was served on the following at their last known addresses:

**<u>Served Electronically through CM/ECF:</u>**

Daniel Gordon Cooper, daniel@sycamore.law

Jesse Colorado Swanhuyser, jesse@sycamore.law

Philip L. Gregory, pgregory@gregorylawgroup.com

William A. Harrison, william@harrisonlawcenter.com

Jason R. Flanders, jrf@atalawgroup.com

*Attorneys for Plaintiffs*

/s/ Alexander M. Purpuro
ALEXANDER M. PURPURO